[Cite as *State v. Tyler*, 2013-Ohio-5242.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99402**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## TIMOTHY TYLER

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-555283

**BEFORE:** McCormack, J., Stewart, A.J., and Boyle, J.

**RELEASED AND JOURNALIZED:** November 27, 2013

**ATTORNEY FOR APPELLANT**

Rick L. Ferrara
2077 East 4th Street
Second Floor
Cleveland, OH 44114


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: John D. Kirkland
Assistant County Prosecutor
8th Floor, Justice Center
1200 Ontario Street
Cleveland, OH 44113

TIM McCORMACK, J.:

{¶1} Defendant-appellant, Timothy Tyler, appeals his convictions for drug possession, drug trafficking, and possession of criminal tools. After a thorough review of the record, we affirm Tyler's convictions.

**Procedural History and Substantive Facts**

{¶2} On October 24, 2011, Tyler was indicted as follows: (1) Counts 1, 3, 5, 7, and 9 — trafficking in violation of R.C. 2925.03(A)(2); (2) Counts 2, 4, 6, 8, and 10 — drug possession in violation of R.C. 2925.11(A); and (3) Count 11 — possession of criminal tools in violation of R.C. 2923.24(A). Each charge carried a forfeiture specification under R.C. 2941.1417(A). Each trafficking charge carried a schoolyard penalty enhancement under R.C. 2925.01.

{¶3} A jury trial commenced on October 11, 2012. During the trial, Tyler twice moved for acquittal under Crim.R. 29. The trial court denied Tyler's first request. The court granted Tyler's second motion as to Counts 9 and 10, thus dismissing the two charges for trafficking and possession of PCP discovered in the trunk of the car located on the premises.[1]

---

[1] We note that this court, sua sponte, remanded this matter to the trial court for a corrected sentencing journal entry in order to provide clarification as to the fact of conviction or dismissal on Counts 9 and 10, in compliance with the final appealable order requirements of *State v. Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142. The trial court's original journal entry indicated that the defendant was found guilty of Counts 9 and 10 but also stated that Count 9 is dismissed.

Pursuant to this court's order on remand, and in accordance with *Lester, supra*, the trial court

{¶4} The jury found Tyler guilty of drug trafficking in Count 3, drug possession in Counts 2, 4, 6, and 8, and possession of criminal tools in Count 11. The jury found Tyler not guilty of drug trafficking in Counts 1, 5, and 7. Tyler was sentenced to 12 months on Counts 2 and 3 (Count 4 was merged into Count 2 for sentencing), two years on Count 6, and 11 months each on Counts 8 and 11. The court ordered the sentence to run concurrently.

{¶5} The evidence presented at trial is as follows: the Cleveland Police Department ("CPD") received a tip from a confidential reliable informant that a house on Corlett Avenue was being used for drug trafficking. Based upon this tip, the police initiated an investigation of the property and conducted surveillance of the property for two weeks. The CPD narcotics department noted heavy traffic in and out of the house on Corlett Avenue and discovered evidence of drug trafficking from the trash. Detective Thomas Klamert conducted various computer database checks on the premises, which associated Tyler with the property. Based upon this information, the CPD obtained a search warrant for the premises. On October 5, 2011, the narcotics unit, with the assistance of CPD's SWAT unit, executed the warrant.

{¶6} As the SWAT unit entered the house, Detectives Matthew Baeppler and Scott Moran covered the rear of the house. The detectives testified that while stationed

corrected its journal entry and clarified that it granted the defendant's Crim.R. 29 motion concerning Counts 9 and 10, stating as follows: "The jury * * * returned a guilty verdict as to Counts 9 and 10. At the time of sentencing on 12/10/2012, pursuant to Rule 29(B), [the] court made a ruling, held in abeyance, dismissing Counts 9 and 10." Having thus been dismissed, Counts 9 and 10 are therefore not an issue before us on appeal.

in the back yard near the garage, they observed the back door open and saw Tyler come out of the back door. The detectives yelled for Tyler to stop. They both testified that Tyler looked at them, keeping his hand by the waistband of his pants, and "bolted and took off running." Tyler ran through several yards and, at one point, shed the coat he was wearing. The detectives chased him for approximately 15 to 20 minutes until Detective Moran found him hiding behind a garage. After a short struggle, Detectives Baeppler and Moran patted Tyler down, read him his rights, handcuffed him, and brought him back to the house on Corlett Avenue. Both detectives testified that when they patted Tyler down, they discovered a cell phone, $110 in cash, and a key in Tyler's pockets. Tyler denied running and denied any involvement with the house. He also denied that the key was discovered in his pockets and that the key belonged to him.

{¶7} Once the SWAT unit cleared the scene, Detective Klamert entered the house and found three handcuffed men sitting in the kitchen. Two men Detective Klamert discovered on the front porch were brought in the house. After the pursuit of Tyler ended, Tyler was brought back in the house by uniformed police officers. Detective Klamert also testified that Tyler initially told him that he did not run from the house and that he did not know anything about the house. Thereafter, during the course of interviewing Tyler, he admitted that he "stayed at [the house] or lived there."

{¶8} Upon entering the home, Detective Klamert and other officers observed drugs and several items associated with drug trafficking throughout the kitchen. These items were located in the freezer, in the trash, in the sink, in kitchen drawers or cabinets,

and out in the open on the kitchen counters. The following drugs were found: crack cocaine; heroin; pills; marijuana; and vials of PCP stored in a sock. The following evidence of drug activity or trafficking was found: plastic tear-off baggies; packaging and drug preparation materials; scales used for weighing drugs; empty vials used for storing PCP; mortar and pestle with heroin; and a grinder with heroin residue. The officers also discovered ammunition throughout the house.

{¶9} In addition to the drugs and drug trafficking materials, the officers discovered various personal items pertaining to Tyler and Tyler's family throughout the house. These items included: (1) two photographs of Tyler displayed on a living room mantle — one pictured Tyler holding a small child and the other pictured Tyler holding a lot of money in his hand with the sign "Hood Rich" in the background; (2) mail addressed to Tyler at the Corlett address; and (3) mail addressed to Shirley Cunningham, Tyler's grandmother, including a utility bill from Cleveland Public Power for the Corlett address, which was dated October 13, 2011. The mail, some opened and some unopened, was located in the kitchen.

{¶10} During the search of the premises, Detective Baeppler testified that he smelled PCP coming from a Buick LaSabre that was parked behind the house. He used the key that he found on Tyler to unlock the vehicle's trunk. Detective Baeppler discovered bottles of PCP and a 2003 award for Tyler's participation in cross country at John F. Kennedy High in the trunk.

**Assignments of Error**

I.    Insufficient evidence supported appellant's convictions for drug trafficking and possession of criminal tools as a principal offender.

II. Insufficient evidence supported appellant's convictions for possession of drugs or criminal tools.

III.   The manifest weight of the evidence did not support appellant's convictions for drug trafficking, possession, or possession of criminal tools.

### Sufficiency of the Evidence

{¶11} In his first assignment of error, Tyler claims his conviction for drug trafficking and possession of criminal tools as a principal offender was not supported by the evidence.   In his second assignment, Tyler claims that his conviction for possession of drugs and criminal tools was equally unsupported.   Tyler claims, therefore, that his motion for acquittal should have been granted.    We disagree.

{¶12} Under Crim.R. 29(A), a trial court "shall order the entry of a judgment of acquittal of one or more offenses * * * if the evidence is insufficient to sustain a conviction of such offense or offenses."

{¶13} When reviewing a challenge of the sufficiency of the evidence, a reviewing court examines the evidence admitted at trial and determines whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."   *Id.*   A sufficiency challenge requires us to review the record to determine whether the state presented evidence on

each of the elements of the offense. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390, 1997-Ohio-52, 678 N.E.2d 541.

{¶14} Tyler was convicted of drug possession, possession of criminal tools, and drug trafficking. Under R.C. 2925.11(A), "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." Pursuant to R.C. 2923.24(A), "[n]o person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally." Finally, under R.C. 2925.03(A)(2):

> No person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person * * *.

{¶15} A person acts "knowingly" when he "is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). Knowledge must be determined through inferences drawn from the surrounding facts and circumstances. *State v. Smith*, 8th Dist. Cuyahoga No. 96348, 2011-Ohio-6466, ¶ 51, citing *State v. Green*, 1st Dist. Hamilton No. C-860791, 1988 Ohio App. LEXIS 1401 (Apr. 20, 1988).

**{¶16}** Under R.C. 2925.01(K), "possess" or "possession" is defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Possession may be actual or constructive. *State v. Haynes*, 25 Ohio St.2d 264, 269-270, 267 N.E.2d 787 (1971). While the mere presence of an individual in the vicinity of illegal drugs or contraband is not sufficient evidence of possession, circumstantial evidence is sufficient to support the element of constructive possession. *Smith* at ¶ 52; *Jenks*, 61 Ohio St.3d at 272, 574 N.E.2d 492. Constructive possession requires evidence that an individual exercised, or had the ability to exercise, dominion and control over an object, even though that object may not be within his immediate physical possession. *State v. Wolery*, 46 Ohio St.2d 316, 329, 348 N.E.2d 351 (1976). The discovery of readily accessible drugs in proximity to a person constitutes circumstantial evidence that the person was in constructive possession of the drugs. *State v. Paige*, 8th Dist. Cuyahoga No. 97939, 2012-Ohio-5727, ¶ 13, citing *State v. Pavlick*, 8th Dist. Cuyahoga No. 81925, 2003-Ohio-6632, ¶ 17.

**{¶17}** As an initial matter, it is not in dispute that the narcotics officers discovered several items used in drug trafficking, such as vials for storing PCP, scales for weighing drugs, grinders for preparing various drugs, and various packaging materials for the distribution of drugs, i.e. "tear-off" plastic bags. It is equally undisputed that the officers discovered large amounts of illegal drugs, which the narcotics officers testified were indicative of drug trafficking, including PCP, heroin, cocaine, and pills. None of

the illegal contraband was found within Tyler's immediate physical possession. The issue, therefore, becomes whether Tyler had the ability to exercise dominion or control over the items sufficient to show constructive possession of the drugs or criminal tools.

{¶18} Tyler argues that the evidence was insufficient to support his convictions because he was not in the kitchen during the raid, he was not observed during the surveillance prior to the raid, and five other people had equal access to the home. He further argues that there was insufficient evidence to support his conviction as a principal offender as the state provided no evidence that Tyler prepared the PCP in the freezer (which relates to Count 3).

{¶19} While we recognize that the mere access to a premises is not enough to infer the possession of drugs or criminal tools, there is sufficient evidence in the record to demonstrate that Tyler had the ability to exercise dominion or control of the Corlett property, thus reflecting constructive possession of the premises.

{¶20} Prior to the raid, Detective Klamert conducted a database research that associated Tyler's name with the Corlett property. When they executed the search warrant, the officers discovered two photographs of Tyler displayed on the living room mantle. Mail addressed to Tyler and his grandmother was discovered in the kitchen where the drugs and drug items were found.

{¶21} While initially denying any involvement with the property, Tyler, in the course of police questioning, later told the detectives that he "stayed at [the house] or lived there." The record shows that Tyler had lived at the Corlett property with his

family until 2005, when he left to attend college. Tyler testified at trial that he would return to Corlett during the summer and holiday breaks, until he was arrested for possession of Ecstasy pills. He stated that after he was released from prison in February 2011, he would return to the house on occasion. He acknowledged that there was drug activity on the premises and in the neighborhood. Ms. Cunningham testified that the residence is currently unoccupied and the last time anyone resided in the home was in 2007.

{¶22} The record further shows that, beginning July 2011, Tyler would go to the house on the 5th of every month to collect his grandmother's public assistance check. Tyler testified that on other occasions, his grandmother would send him to the house to retrieve additional items for her, such as a marriage license, which he had retrieved from his grandmother's old bedroom. On the day of his arrest, Tyler stated that he had come to the house to pick up his grandmother's check, he entered the house to retrieve the check from the mailbox, and he went outside after getting the check, having never entered the kitchen. Shirley Cunningham's public assistance check, however, was discovered on the microwave in the kitchen. Two detectives testified that they saw Tyler bolt from the rear door of the house and run, despite their command to stop. While initially denying running from the police, Tyler later admitted to running because he was nervous. The evidence shows that the rear door is approximately five feet from the kitchen, and the mailbox is in an area adjacent to the kitchen.

**{¶23}** We find this evidence sufficient to support a finding of constructive possession of drugs and criminal tools. Tyler had the ability to exercise control over the premises, he had access to the drugs and drug items used in trafficking, and he knew of the drug activity occurring on the premises. This court has consistently held that constructive possession can be established through the knowledge of illegal substances or goods and the ability to exercise control over the goods or the premises on which the goods are found. *State v. Harris*, 8th Dist. Cuyahoga Nos. 98183 and 98184, 2013-Ohio-484, ¶ 18, citing *State v. Santiago*, 8th Dist. Cuyahoga No. 95333, 2011-Ohio-1691, ¶ 30.

**{¶24}** Furthermore, while there were five additional individuals on the premises at the time of Tyler's arrest, this is not dispositive of the issue of whether Tyler had constructive possession of the drugs and criminal tools. *State v. Scalf*, 126 Ohio App.3d 614, 620, 710 N.E.2d 1206 (8th Dist.1998) (finding that possession may be established where the defendant occupies the premises with others but the drugs are found in the defendant's living area and in plain view throughout the apartment). Exclusive control over the premises is not required. *State v. Howard*, 8th Dist. Cuyahoga No. 85034, 2005-Ohio-4007, ¶ 15, citing *In re Farr*, 10th Dist. Franklin No. 93AP-201, 1993 Ohio App. LEXIS 5394, *16 (Nov. 9, 1993) (concluding that nothing in the statute states that illegal drugs must be in the sole or exclusive possession of the accused at the time of the offense); *see* R.C. 2925.01(K). "'All that is required for constructive possession is some measure of dominion or control over the drugs in question, beyond mere access to them.'"

*Howard*, quoting *In re Farr*, at *17.   The fact that others were on the premises in addition to Tyler does not mean that Tyler could not exercise dominion or control over the drugs and criminal tools.   We, therefore, find sufficient evidence to support Tyler's conviction for drug trafficking as a principal offender.

{¶25} After viewing the evidence in a light most favorable to the state, we find that any rational trier of fact could have found the essential elements of the crimes proven beyond a reasonable doubt.   Tyler's first and second assignments of error are, therefore, overruled.

## Manifest Weight

{¶26} In his third assignment of error, Tyler claims that his convictions were against the manifest weight of the evidence.   We disagree.

{¶27} Unlike sufficiency of the evidence, manifest weight of the evidence raises a factual issue.

> "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

*Thompkins*, 78 Ohio St.3d at 387, 1997-Ohio-52, 678 N.E.2d 541, quoting *Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717.

{¶28} "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts."   *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d

212 (1967), paragraph one of the syllabus. When examining witness credibility, "the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). A factfinder is free to believe all, some, or none of the testimony of each witness appearing before it. *State v. Ellis*, 8th Dist. Cuyahoga No. 98538, 2013-Ohio-1184, ¶ 18.

{¶29} For the reasons discussed under our analysis of the sufficiency of the evidence, we find that the evidence demonstrated that Tyler constructively possessed drugs and criminal tools. We further find that the weight of the evidence supported Tyler's conviction for drug trafficking.

{¶30} The state presented evidence that Tyler's name was associated with the premises upon which the drugs and criminal tools were found. Tyler testified that he previously stayed at the house, frequently returned to the house during school breaks, and would go to the house every month to retrieve items for his grandmother. Two photographs of Tyler were displayed on a mantle in the living room, one of which pictured Tyler holding a lot of money in his hand with the sign "Hood Rich" in the background. Mail addressed to Tyler and Tyler's grandmother were discovered in the kitchen, where the drugs and criminal tools were discovered. The check that Tyler picked up from the house that day for Ms. Cunningham was found on the microwave in the kitchen.

**{¶31}** Tyler acknowledged that there was drug activity on the premises and in the neighborhood. He also admitted that he was previously arrested for drug possession and released from prison in February 2011.

**{¶32}** The state presented evidence that various illegal drugs in large quantities were discovered in the kitchen, along with the tools used in the preparation and distribution of the drugs. The evidence showed that the amount of drugs and the type of materials and equipment discovered in the house were indicative of drug trafficking.

**{¶33}** Detectives Baeppler and Moran testified that they witnessed Tyler bolt from the back door of the house and run. While initially denying any connection with the premises and denying running, Tyler admitted during questioning that he had stayed at the home and that he ran because he was nervous.

**{¶34}** Tyler essentially argues that the weight of the evidence favored him because the state's testimony was impugned at trial. Specifically, Tyler claims that the arresting officer lied about where he found the key that opened the trunk of the Buick LaSabre, which contained vials of PCP. Tyler also claims that he did not have $110 in his pockets, contrary to the testimony of the two arresting officers.

**{¶35}** While Tyler asserts that the state's testimony is not credible, the trier of fact is in the best position to assess the credibility of the witnesses, and it is free to believe all, some, or none of the testimony of each witness appearing before it. This court may not substitute its own judgment for that of the factfinder. After examining the entire record, weighing all of the evidence and all reasonable inferences, we are unable to conclude that

the jury clearly lost its way. This is not one of the exceptional cases in which the evidence weighs heavily against the conviction. Tyler's third assignment of error is overruled.

**{¶36}** Judgment is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
TIM McCORMACK, JUDGE

MELODY J. STEWART, A.J., CONCURS;
MARY J. BOYLE, J., DISSENTS (WITH SEPARATE OPINION ATTACHED).

MARY J. BOYLE, J., DISSENTING:

**{¶37}** While I agree with the majority's resolution of the assignments of error, I nevertheless dissent because I find that the judgment entry does not constitute a final appealable order.

**{¶38}** "A judgment of conviction is a final order subject to appeal under R.C. 2505.02 when it sets forth (1) the fact of the conviction, (2) the sentence, (3) the judge's

signature, and (4) the time stamp indicating the entry upon the journal by the clerk." *State v. Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142, paragraph one of the syllabus. As noted in the majority's sole footnote, this court, sua sponte, remanded this matter to the trial court because the journal entry appealed from did not comply with the requirements of *Lester*.

**{¶39}** I agree with the majority that the law "'does not require the sentencing journal entry to reiterate counts for which there were no convictions, such as counts that were dismissed.'" *State ex rel. Davis v. Cuyahoga Cty. Court of Common Pleas*, 127 Ohio St.3d 29, 2010-Ohio-4728, 936 N.E.2d 41, ¶ 2, quoting *State ex rel. Davis v. Cuyahoga Cty. Court of Common Pleas*, 8th Dist. Cuyahoga No. 93814, 2010-Ohio-1066, ¶ 8. This is true where the counts were disposed of prior to the sentencing order that creates the final, appealable order.

**{¶40}** However, in this case, the trial court attempted to dispose of Counts 9 and 10 in the sentencing journal entry that was intended to be the final appealable order in this case. The remand order sought clarification as to whether there was a conviction or an acquittal on Count 9. Therefore, I believe that the entire sentencing journal entry needed to be restated in order to create a final appealable order in compliance with *Lester*.