[Cite as *State v. Coleman*, 2016-Ohio-297.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
### No. 102966

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# DEMETRIUS E. COLEMAN

DEFENDANT-APPELLANT

### JUDGMENT:
## CONVICTIONS AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-590438-B

**BEFORE:** S. Gallagher, J., Kilbane, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** January 28, 2016

**ATTORNEY FOR APPELLANT**

Christopher M. Kelley
75 Public Square
Suite 700
Cleveland, OH    44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By: Melissa Riley
Assistant Prosecuting Attorney
Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio    44113

SEAN C. GALLAGHER, J.:

**{¶1}** Appellant Demetrius E. Coleman appeals his convictions and sentence. Upon review, we affirm Coleman's convictions, but vacate his sentence and remand for resentencing.

**{¶2}** Coleman was charged under a three-count indictment with aggravated burglary, in violation of R.C. 2911.11(A)(2), with a one-year firearm specification; grand theft, in violation of R.C. 2913.02(A)(1), with a one-year firearm specification; and tampering with evidence, in violation of R.C. 2921.12(A)(1). Two codefendants were also charged in the case. Coleman entered a plea of not guilty to the charges, and the case proceeded to a jury trial. Coleman and codefendant Jennifer Shamblin were tried together.

**{¶3}** At trial, testimony and evidence were presented as to events that occurred on October 16, 2014. The state presented testimony from several police officers involved in the matter.

**{¶4}** According to the testimony presented, the victim, Officer Kevin Berry, a Cleveland police officer, went to work in the morning, but returned home around 1:15 p.m. to pick up something he had forgotten. He was in a patrol car. When he arrived at his house, he found a vehicle parked in his driveway with the engine running. Codefendant Shamblin was in the driver's seat. When Berry asked Shamblin what she was doing there, she responded that she was there to "pick up her nephew." Berry

became suspicious. He took the keys from Shamblin and went up his driveway to check the house.

{¶5} Berry discovered a window was broken and saw a television set lying in the backyard. He then returned to Shamblin's vehicle, handcuffed her to the steering wheel, called for backup, and went to check inside his house. He noticed the basement light had been turned on. Berry announced his presence and yelled "come out with your hands up." Berry glanced toward his kitchen and noticed various items were scattered around the floor. After making several announcements for any suspects to come out with their hands up, Berry retreated from the home because he knew he had a weapon in the home and was concerned for his safety.

{¶6} After backup assistance arrived, the police checked the house. Several items, including a revolver, ammunition, and a ballistic vest, were missing. Nobody was found inside, and a search of the neighborhood for suspects commenced. A short time later, Coleman was spotted running from the end of the street. He was then caught and apprehended. Cuts were observed on his hands. Coleman indicated his phone was in Shamblin's vehicle.

{¶7} Berry asked Coleman for the location of his missing gun. After asking for a favor, Coleman directed the officers to the location of Berry's gun and other belongings, which was behind a garage that was about a quarter mile from Berry's home.

{¶8} Codefendant Shamblin also testified in the matter. She testified that Coleman was unknown to her prior to the date of this incident. She stated she was

contacted by a friend and asked to give Coleman a ride.  Shamblin picked up Coleman in front of a Kmart at 1:09 p.m.  As she was driving, Coleman told her to turn down a nearby side street and directed her to a driveway.  Shamblin testified that Coleman told her he would be right back and went to the back of the house.  Officer Berry then knocked on the vehicle's window.

{¶9} Shamblin conceded that Coleman left his cell phone in the vehicle.  She also testified that the vehicle was an SUV that belonged to a friend whose house she was at prior to picking up Coleman.  She stated that she left her vehicle, which was a Chrysler, at her friend's house, and taken the SUV, which had more room in the back.

{¶10} The trial court denied Coleman's Crim.R. 29 motion for acquittal.  The jury returned a verdict of guilty of aggravated burglary, grand theft, and tampering with evidence.  The jury found appellant not guilty of the firearm specification under Count 1, but guilty of the one-year firearm specification under Count 2.  The court ordered consecutive sentences for Counts 1 and 2, and a concurrent sentence for Count 3, and imposed a total aggregate prison term of 12 years.

{¶11} Coleman timely filed this appeal.  He raises three assignments of error for our review.  Under his first assignment of error, Coleman claims the trial court erred in denying his Crim.R. 29 motion for acquittal because there was insufficient evidence to support his conviction for aggravated burglary.

{¶12} A motion for judgment of acquittal under Crim.R. 29(A) requires a court to consider if the evidence is insufficient to sustain a conviction.  "The relevant inquiry is

whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶13} Coleman was convicted of aggravated burglary under R.C. 2911.11(A)(2), which provides:

> No person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, if * * * [t]he offender has a deadly weapon or dangerous ordinance on or about the offender's person or under the offender's control.

{¶14} Coleman argues that there was insufficient evidence to support his conviction for aggravated burglary.  More specifically, he claims the state failed to produce sufficient evidence that anyone was "present or likely to be present" at the time of the offense.  We recognize that Coleman relies upon a former version of the statute and that the current version requires that "another person other than an accomplice of the offender is present[.]"

{¶15} It has been held that "the element: 'while another person is present' in R.C. 2911.11(A) is sufficiently established if the state demonstrates the presence of the person inside the structure is associated in time with the entry, or the entry and the presence of

the person inside are part of one continuous occurrence." *State v. Ramirez*, 12th Dist. Clermont No. CA2004-06-046, 2005-Ohio-2662, ¶ 26.

{¶16} The evidence in this case was sufficient to establish that Berry arrived at his home, which was an occupied structure, while the burglary was in progress. When Berry arrived, a vehicle was in the driveway with the engine still running. Shamblin testified that Coleman had gone to the back of the house, that he left his cell phone in the vehicle, that he stated he would be right back, that it had been only a couple of minutes, and that she was waiting for Coleman. Upon walking up the driveway, Berry observed his television lying on the back lawn and noticed a broken window. After handcuffing Shamblin to the steering wheel and calling for backup, he entered the home and announced his presence. He observed a light on in the basement and belongings scattered on the kitchen floor. He retreated to wait for backup because of a concern for his safety because he kept a loaded gun in the home. The state produced sufficient evidence that Berry was present at the time of the offense.

{¶17} Viewing the evidence in a light most favorable to the state, we find that any rational trier of fact could have found the essential elements of aggravated burglary were proven beyond a reasonable doubt. Coleman's first assignment of error is overruled.

{¶18} Under his second assignment of error, Coleman claims that his convictions were against the manifest weight of the evidence. Coleman argues that there was not enough time to commit the crimes and that there was no physical evidence against him.

{¶19} When reviewing a claim challenging the manifest weight of the evidence, the court, reviewing the entire record, must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the exceptional case in which the evidence weighs heavily against the conviction. *Id.* A claim that a jury verdict is against the manifest weight of the evidence involves a separate and distinct test that is much broader than the test for sufficiency. *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 193.

{¶20} The aggravated burglary statute has already been set forth. R.C. 2913.02(A)(1), theft, provides:

> No person, with the purpose to deprive the owner of property * * * shall knowingly obtain or exert control over * * * the property * * * without the consent of the owner or person authorized to give consent.

The offense rises to grand theft "if the property stolen is a firearm or dangerous ordnance." R.C. 2913.02(B)(4).

{¶21} R.C. 2921.12(A)(1), tampering with evidence, provides:

> No person, knowing that an official proceeding or investigation is in
>
> progress, or is about to be or likely to be instituted, shall do any of the
>
> following: (1)__Alter, destroy, conceal, or remove any record, document, or

thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]

**{¶22}** Circumstantial and direct evidence are of equal probative value. *Jenks*, 61 Ohio St.3d at 272, 574 N.E.2d 492. Hence, proof of guilt may be made by circumstantial or direct evidence, or both. *See id.* at 272-273. "[A]ll that is required of the jury is that it weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt." *Id.* at 272. Further, "circumstantial evidence alone is sufficient to support a conviction; physical evidence is not required." *State v. Jamie*, 8th Dist. Cuyahoga No. 102103, 2015-Ohio-3583, ¶ 39, citing *State v. Nicely*, 39 Ohio St.3d 147, 529 N.E.2d 1236 (1988), paragraph two of the syllabus.

**{¶23}** In this case, the state presented substantial circumstantial evidence to support the convictions. The evidence reflected that Shamblin picked Coleman up from Kmart at 1:09 p.m. Shamblin testified that Coleman directed her to the victim's house, and that he got out of the car and went to the back of the home. When Berry arrived home at 1:15 p.m., Shamblin was in a vehicle in the driveway with the engine running. Berry observed his television in the backyard and a broken window at the back of the house. A light was on in the basement, and items had been scattered in the home. Berry announced his presence, but retreated to wait for backup assistance. Shortly after the police arrived, Coleman was apprehended in the vicinity of the home, and cuts were observed on his hands. He provided the location of a duffle bag containing the gun and

other items that were stolen from Berry's home. The bag was hidden behind a garage about a quarter mile from Berry's home.

**{¶24}** Upon our review, we cannot not find that the jury lost its way or that the verdict is against the manifest weight of the evidence. The second assignment of error is overruled.

**{¶25}** Under his third assignment of error, Coleman claims that the trial court failed to make the requisite findings under R.C. 2929.14(C)(4) for imposing consecutive sentences.

**{¶26}** Pursuant to R.C. 2953.08(G)(2), we may modify or vacate a sentence only if we clearly and convincingly find that the record does not support the mandatory sentencing findings, or that the sentence is otherwise contrary to law. A sentence is "contrary to law" if the sentencing court failed to make the findings required to order consecutive service of sentences under R.C. 2929.14(C)(4). *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37.

**{¶27}** Under R.C. 2929.14(C)(4), consecutive sentences may be imposed if the trial court finds that (1) a consecutive sentence is necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) any one of the following apply:

> (1) the offender committed one of more of the multiple offenses while awaiting trial or sentencing, while under a sanction, or while under postrelease control for a prior offense;

(2) at least two of the multiple offenses were committed as part of one or more courses of the conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct; or

(3) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4).

{¶28} A trial court must both make the statutory findings mandated for consecutive sentences under R.C. 2929.14(C)(4) at the sentencing hearing and incorporate those findings into its sentencing entry. *Bonnell* at the syllabus. However, "a word-for-word recitation of the language of the statute is not required, and as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id*. at ¶ 29.

{¶29} In *Bonnell*, the Ohio Supreme Court found that it could discern from the record that certain findings had been made; however, the court found that the trial court failed to address the proportionality of consecutive sentences. *Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, at ¶ 33-34. The court's analysis was as follows:

> We can discern from the trial court's statement that Bonnell had "shown very little respect for society and the rules of society" that it found a need to protect the public from future crime or to punish Bonnell. We also can conclude that the court found that Bonnell's "atrocious" record related to a history of criminal conduct that demonstrated the need for consecutive sentences to protect the public from future crime. But it never addressed

the proportionality of consecutive sentences to the seriousness of Bonnell's conduct and the danger he posed to the public, which in this case involved an aggregate sentence of eight years and five months in prison for taking $117 in change from vending machines.

Thus, the court's description of Bonnell's criminal record as atrocious and its notation of his lack of respect for society do not permit us to conclude that the trial court had made the mandated statutory findings in accordance with R.C. 2929.14(C)(4).

{¶30} In this case, our review reflects that the trial court made the requisite findings in its journal entry. Further, the trial court did engage in some analysis on the record before imposing consecutive sentences. The record reflects that the trial court recognized that burglary is a "dangerous crime" and that Coleman keeps "doing it over and over again" and had not "learned anything from the court system." These statements could arguably be interpreted to be a finding that consecutive sentences are necessary to protect the public from future crime, and also reflect upon Coleman's history of criminal conduct. However, there is no language in the record that could be reasonably construed as satisfying the requirement of R.C. 2929.14(C)(4) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. Although this court has found use of the term "disproportionate" is not required, there must be language from which the court can discern the finding has been satisifed. *See, e.g.*, *State v. Cox*, 8th Dist. Cuyahoga No. 102629, 2016-Ohio-20, ¶ 5. Here, such a determination cannot be made from the record.

{¶31} Upon our review, we find the trial court did not satisfy its statutory obligation for imposing consecutive sentences. Accordingly, we vacate Coleman's

sentence and remand the case for resentencing for the trial court to consider whether consecutive sentences are appropriate under R.C. 2929.14(C)(4) and, if so, to make all the required findings on the record and incorporate those findings in the sentencing journal entry in accordance with *Bonnell*. The third assignment of error is sustained.

**{¶32}** Convictions affirmed; sentence is vacated, and the case is remanded for resentencing.

It is ordered that appellant and appellee share the costs herein taxed. The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for resentencing.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

MARY EILEEN KILBANE, P.J., and
TIM McCORMACK, J., CONCUR