[Cite as *State v. Sharp*, 2016-Ohio-2634.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103445**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MICHAEL SHARP

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-593128-A

**BEFORE:** McCormack, P.J., E.T. Gallagher, J., and Boyle, J.

**RELEASED AND JOURNALIZED:** April 21, 2016

**ATTORNEY FOR APPELLANT**

Britta M. Barthol
P.O. Box 218
Northfield, OH 44067


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Joan M. Bascone
Assistant County Prosecutor
8th Floor, Justice Center
1200 Ontario Street
Cleveland, OH   44113

TIM McCORMACK, P.J.:

{¶1} Defendant-appellant, Michael Sharp, appeals his conviction for tampering with evidence and drug possession. For the reasons that follow, we affirm.

Procedural History and Substantive Facts

{¶2} Sharp was charged under a two-count indictment with tampering with evidence, in violation of R.C. 2921.12(A)(1), and drug possession, in violation of R.C. 2925.11(A). Sharp pleaded not guilty to the charges, and the case proceeded to a jury trial.

{¶3} At trial, the state presented evidence concerning an arrest that occurred incidental to a traffic stop on January 31, 2015. The state presented the testimony of Bedford Heights police officer Ryan Kaetzel and Detective Frank Reed, as well as forensic scientist Shervonne Bufford.

{¶4} Officer Kaetzel testified that he was on patrol in Bedford Heights on January 31, 2015, when his attention was drawn to an orange Chevy Cavalier with an expired registration sticker directly in front of him. Officer Kaetzel stated that he knew the current registration sticker was an orange color and the sticker on the Cavalier was green, indicating an expiration from the prior year. He verified the vehicle's registration with his in-car computer system and learned that the vehicle registration expired in August 2014, which means that it had expired five months earlier. He called dispatch, which confirmed that the vehicle registration was, in fact, expired. Thereafter, Officer

Kaetzel initiated his lights and pulled the vehicle over. He received acknowledgment from dispatch regarding the traffic stop, and he activated his body camera.

{¶5} Officer Kaetzel testified that he approached the driver side of the car and observed a male driver whom he later identified as Sharp. At this time, Officer Kaetzel was aware that the vehicle he pulled over was registered to a female. He also learned at this time that the plates on the orange Chevy Cavalier were actually registered to a red Ford Escort, thus making them "fictitious" plates. Officer Kaetzel explained to Sharp why he had pulled him over and asked Sharp for his driver's license and proof of insurance. Sharp appeared nervous and repeatedly told Officer Kaetzel that it was not his vehicle and he was just traveling home. The officer testified that he began to "pick up indicators that maybe there was something more * * * than just a normal traffic stop" and Sharp appeared eager to end the encounter. He stated that Sharp appeared "overly nervous," and the encounter raised red flags for him, noting that he's made "hundreds" of traffic stops and Sharp appeared "more nervous than normal."

{¶6} Upon receiving Sharp's driver's license, Officer Kaetzel returned to his patrol car and requested back-up. His request for back-up was based upon his observations of Sharp and the fact that the vehicle had fictitious plates, and he believed that the traffic stop may become more than a routine traffic stop. When the officer returned to his patrol car, he learned through his LEADS computer that Sharp's driver's license was under suspension. Due to the number of suspensions Sharp had been under,

it was the policy of the police department to make an arrest. He waited for back-up to arrive and for confirmation from dispatch regarding the need for an arrest.

{¶7} After back-up arrived and he received confirmation from dispatch that an arrest must be made, Officer Kaetzel and the back-up officer approached Sharp in the vehicle. Officer Kaetzel informed Sharp that he would be placed under arrest due to his driving suspensions and the vehicle must be impounded. The officer testified that at that point, Sharp became very nervous and "very fidgety" and he stated that he could not understand why the vehicle must be impounded. Sharp asked if his girlfriend could pick up the car. The officer explained that due to the fictitious plates, their policy required the car be impounded. Officer Kaetzel instructed Sharp to gather his personal belongings and exit the vehicle.

{¶8} Officer Kaetzel stated that Sharp was speaking with someone on his cell phone for a long period of time. Sharp appeared very nervous and began asking the officer if he could leave his personal items in the vehicle, including a pack of cigarettes. Officer Kaetzel informed Sharp that he could leave any items he wished, but he must leave the key in the ignition. When Officer Kaetzel asked Sharp to exit the vehicle, Sharp, again, appeared "shaky" and very nervous, and he continued to reach under his seat. At this point, Officer Kaetzel became concerned that Sharp was reaching for a weapon. He illuminated his flashlight under Sharp's seat and asked Sharp what he was reaching for. Sharp did not answer him. Once again, Officer Kaetzel instructed Sharp to exit the vehicle.

{¶9} At that point, Officer Kaetzel observed Sharp quickly throw an item, appearing to be a piece of paper, into his mouth. The officer asked Sharp what he put into his mouth, and Sharp told him that it was just a piece of paper. Officer Kaetzel informed Sharp that he believed Sharp was attempting to destroy evidence or eat some form of drugs. Officer Kaetzel testified that Sharp "kept saying that it was nothing, he put nothing into his mouth, he said it was just a piece of paper." The officer then grabbed Sharp's arm, moved it away from his mouth, and observed a scattering of white powder on the dashboard.

{¶10} With the back-up officer's assistance, Office Kaetzel removed Sharp from the vehicle and placed him into custody. Having observed Sharp place the paper in his mouth and noting his concern that Sharp may have ingested a drug, Officer Kaetzel asked Sharp to open his mouth. At that point, the officer observed a white substance in the back of Sharp's throat. Sharp was placed under arrest and transported to the jail, where paramedics would assess his medical condition.

{¶11} Thereafter, Officer Kaetzel collected the white substance from the dashboard and placed it into an evidence bag. He also discovered the piece of paper Sharp had attempted to place in his mouth on the driver's seat and placed the paper into evidence. Detective Reed transported the evidence to the Bureau of Criminal Investigation ("BCI") lab for testing. Shervonne Bufford, forensic scientist with BCI, analyzed the substance found in the evidence bag and concluded that the white substance was a trace amount of cocaine.

{¶12} The defense moved for Crim.R. 29 acquittal at the close of the state's case and after the defense rested, both of which the trial court denied. The jury found Sharp guilty of both charges. The trial court sentenced Sharp to two years of community control sanctions on each charge, to be served concurrently.

{¶13} Sharp now appeals his convictions, raising two assignments of error for our review: his convictions were not supported by sufficient evidence and the convictions are against the manifest weight of the evidence.

Sufficiency

{¶14} In his first assignment of error, Sharp claims that the state failed to provide sufficient evidence to support his convictions for tampering with evidence and drug possession.

{¶15} When assessing a challenge of sufficiency of the evidence, a reviewing court examines the evidence admitted at trial and determines whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997)._

**{¶16}** Sharp argues that his conviction for tampering with evidence is not supported by sufficient evidence. Specifically, he argues there is no evidence that he knew an investigation was in progress or likely to be instituted concerning drugs.

**{¶17}** Sharp was convicted of tampering with evidence in violation of R.C. 2921.12(A)(1). That statute provides that

> [n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]

R.C. 2921.12(A)(1); *State v. Coleman*, 8th Dist. Cuyahoga No. 102966, 2016-Ohio-297, ¶ 21.

**{¶18}** In examining R.C. 2921.12(A)(1), the Ohio Supreme Court acknowledged that there are three elements to tampering with evidence: "(1) the knowledge of an official proceeding or investigation in progress or likely to be instituted; (2) the alteration, destruction, concealment, or removal of the potential evidence; and (3) the purpose of impairing the potential evidence's availability or value in such proceeding or investigation." *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, 11 N.E.3d 1175, ¶ 11. A conviction for tampering with evidence under this statute, therefore, necessarily requires proof that the defendant intended to impair the availability of the evidence that is related to "an existing or likely official investigation or proceeding." *Id.* at ¶ 19.

"Likelihood is measured at the time of the act of alleged tampering." *Id._* And the state must demonstrate that the defendant knew that an investigation was likely "at the time of the concealment." *State v. Barry*, Slip Opinion No. 2015-Ohio-5449. Knowledge that a criminal investigation is imminent is based upon a reasonable person standard. *State v. Workman*, 3d Dist. Auglaize No. 2-15-05, 2015-Ohio-5049, ¶ 51.

{¶19} Tampering with evidence under R.C. 2921.12(A)(1) requires a person to act with purpose, meaning that the person has a specific intention to cause a certain result. *See State v. Skorvanek*, 182 Ohio App.3d 615, 2009-Ohio-1709, 914 N.E.2d 418, ¶ 21 (9th Dist.); R.C. 2901.22(A). When determining whether the defendant acted purposely, a defendant's state of mind may be inferred from the surrounding circumstances. *State v. Rock*, 3d Dist. Seneca No. 13-13-38, 2014-Ohio-1786, ¶ 13, citing *Skorvanek* at ¶ 21.

{¶20} Sharp argues that he was being investigated for driving under suspension and any attempts to hide or destroy the cocaine did not impair evidence related to that investigation. He cites *Straley* for support. In *Straley*, two narcotic detectives stopped Straley's car after observing it travel left of center. They smelled alcohol on Straley and suspected her of driving while under the influence of alcohol, but a search of the car and her bag revealed no contraband. The detectives decided not to arrest her, but while they were attempting to find her a ride home, Straley said that she needed to urinate. She ran to the corner of a building and relieved herself, and when she had finished, a detective examined the area and discovered a urine soaked cellophane baggie containing crack cocaine. *Id.* at ¶ 2-4. The Ohio Supreme Court determined that "the evidence

tampered with must have some relevance to an ongoing or likely investigation to support a tampering charge," and that the "[l]ikelihood [of an investigation] is measured at the time of the act of alleged tampering." *Id.* at ¶ 16, 19. The court therefore concluded that Straley's conviction for tampering was not supported by sufficient evidence, because "[t]here is nothing in the record to suggest that the officers were conducting or likely to conduct an investigation into trafficking or possession of cocaine when Straley discarded the baggie." *Id.* at ¶ 19.

{¶21} This case is distinguishable. Here, although the investigation began as a routine traffic stop due to an expired registration sticker, it escalated to the discovery of fictitious plates and Sharp's suspended driver's license, which resulted in the need to arrest Sharp and impound the vehicle. When the officer advised Sharp that he would be placed under arrest and the vehicle would be impounded, Sharp became very nervous and asked if he could leave his personal belongings in the vehicle and if his girlfriend could retrieve the car. When Officer Kaetzel instructed Sharp to exit the vehicle, Sharp continued to appear nervous and repeatedly reached under his seat. The officer became aware of Sharp's actions and asked why he was reaching under his seat, shining his flashlight in that direction. When Officer Kaetzel instructed Sharp to exit the vehicle one last time, Sharp quickly threw an item into his mouth and told the officer that it was just paper.

{¶22} In light of the above, when viewing the evidence in the light most favorable to the state, we find any rational trier of fact could find that at the time Sharp placed the

paper containing cocaine in his mouth, he knew that an investigation into the possession of drugs would likely be instituted. A reasonable person could find that under the circumstances, Sharp would expect to be searched by police upon being placed under arrest, as well as the vehicle being searched upon impoundment. Moreover, a rational trier of fact could infer that Sharp attempted to destroy or remove evidence of drugs (cocaine) by putting the drugs in his mouth and swallowing, with the purpose of impairing its availability in the investigation. Sharp's conviction for tampering with evidence is therefore supported by sufficient evidence.

{¶23} Sharp also argues that his conviction for drug possession was not supported by sufficient evidence. In support, he contends that the car did not belong to him and there was no evidence that he had the piece of paper in his possession.

{¶24} Sharp was convicted of drug possession in violation of R.C. 2925.11(A), which provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog."

{¶25} A person acts "knowingly" when he "is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B); *State v. Tyler*, 8th Dist. Cuyahoga No. 99402, 2013-Ohio-5242, ¶ 15. Knowledge must be determined through inferences drawn from the surrounding facts and circumstances. *State v. Smith*, 8th Dist. Cuyahoga No. 96348, 2011-Ohio-6466, ¶ 51,

citing *State v. Green*, 1st Dist. Hamilton No. C-860791, 1988 Ohio App. LEXIS 1401 (Apr. 20, 1988).

**{¶26}** Under R.C. 2925.01(K), "possess" or "possession" is defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Possession may be actual or constructive. *State v. Haynes*, 25 Ohio St.2d 264, 269-270, 267 N.E.2d 787 (1971). While the mere presence of an individual in the vicinity of illegal drugs or contraband is not sufficient evidence of possession, circumstantial evidence is sufficient to support the element of constructive possession. *Smith* at ¶ 52; *Jenks*, 61 Ohio St.3d at 272, 574 N.E.2d 492.

**{¶27}** Constructive possession requires evidence that an individual exercised, or had the ability to exercise, dominion and control over an object, even though that object may not be within his immediate physical possession. *State v. Wolery*, 46 Ohio St.2d 316, 329, 348 N.E.2d 351 (1976). The discovery of readily accessible drugs in proximity to a person constitutes circumstantial evidence that the person was in constructive possession of the drugs. *State v. Paige*, 8th Dist. Cuyahoga No. 97939, 2012-Ohio-5727, ¶ 13, citing *State v. Pavlick*, 8th Dist. Cuyahoga No. 81925, 2003-Ohio-6632, ¶ 17. The state may therefore demonstrate constructive possession, i.e., dominion and control, of drugs solely by the presentation of circumstantial evidence. *State v. Wilson*, 8th Dist. Cuyahoga No. 102231, 2015-Ohio-4979, ¶ 10, citing *State v. Trembly*, 137 Ohio App.3d 134, 141, 738 N.E.2d 93 (8th Dist.2000).

**{¶28}** Here, the evidence demonstrates that Sharp, the driver, was the sole occupant of the vehicle. Officer Kaetzel testified that when he advised Sharp that he would be placed under arrest and the vehicle would be impounded, Sharp became very nervous and asked if he could leave his personal belongings in the vehicle and if his girlfriend could retrieve the car. When Officer Kaetzel instructed Sharp to exit the vehicle, Sharp continued to appear nervous and "shaky," and he repeatedly reached under his seat. When Officer Kaetzel instructed Sharp to exit the vehicle one last time, Sharp quickly threw an item into his mouth and told the officer that it was just paper. Immediately thereafter, the officer grabbed Sharp's arm and moved it from his mouth, and he observed white powder on the dashboard. After removing Sharp from the vehicle, the officer shined a light into Sharp's mouth and observed a white substance in the back of Sharp's throat. After returning to the vehicle, Officer Kaetzel discovered the paper that Sharp had placed into his mouth on the driver's seat. The evidence shows that the white powder substance removed from the dashboard of the vehicle and the paper retrieved from the driver's seat of the vehicle contained cocaine.

**{¶29}** In light of the above, we find that a rational trier of fact could find that the foregoing evidence, albeit circumstantial, was sufficient to demonstrate that Sharp was in constructive possession of the drugs found on the dashboard and the paper on the driver's seat of the vehicle.

**{¶30}** Sharp's first assignment of error is overruled.

Manifest Weight of the Evidence

{¶31} In his second assignment of error, Sharp claims that his convictions were against the manifest weight of the evidence. He incorporates the arguments he presented in his first assignment of error and contends that there were no drugs found in his possession, the white substance in his throat was not tested, and the car in which the cocaine was found did not belong to him.

{¶32} While the test for sufficiency of the evidence requires a determination whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion. *Thompkins,* 78 Ohio St.3d at 390, 678 N.E.2d 541. Also unlike a challenge to the sufficiency of the evidence, a manifest weight challenge raises a factual issue.

> "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

*Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A finding that a conviction was supported by the manifest weight of the evidence, however, necessarily includes a finding of sufficiency. *State v. Howard*, 8th Dist. Cuyahoga No. 97695, 2012-Ohio-3459, ¶ 14, citing *Thompkins* at 388.

{¶33} "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d

212 (1967), paragraph one of the syllabus. And a factfinder is free to believe all, some, or none of the testimony of each witness appearing before it. *State v. Ellis*, 8th Dist. Cuyahoga No. 98538, 2013-Ohio-1184, ¶ 18.

**{¶34}** Circumstantial evidence and direct evidence inherently possess the same probative value. *Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph one of the syllabus. "[A]ll that is required of the jury is that it weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt." *Id.* at 272. "'Circumstantial evidence is not only sufficient, but may also be more certain, satisfying, and persuasive than direct evidence.'" *State v. Hawthorne*, 8th Dist. Cuyahoga No. 96496, 2011-Ohio-6078, ¶ 9, quoting *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330, 81 S.Ct. 6, 5 L.Ed.2d 20 (1960). And circumstantial evidence alone is sufficient to support a conviction. *Coleman*, 8th Dist. Cuyahoga No. 102966, 2016-Ohio-297, at ¶ 22.

**{¶35}** Here, the evidence shows that when Officer Kaetzel advised Sharp that he would be placed under arrest and the vehicle would be impounded, Sharp became very nervous, asked if he could leave his personal belongings in the car, and repeatedly reached under his seat. Just before exiting the vehicle, he quickly threw an item into his mouth and told the officer that it was "just paper." When the officer removed Sharp's arm away from his mouth, the officer discovered a white powder on the dashboard. The officer also discovered a white substance in the back of Sharp's throat. And upon returning to the vehicle, the officer discovered the piece of paper Sharp had attempted to

place into his mouth on the driver's seat of the vehicle. Forensic tests revealed that the white substance found on the dashboard and the piece of paper was cocaine.

{¶36} Based upon the record, we are unable to conclude that this is the exceptional case in which the evidence weighs heavily against the conviction. We cannot say that the jury clearly lost its way, thus creating such a manifest miscarriage of justice that the convictions for tampering with evidence and drug possession must be reversed.

{¶37} Sharp's second assignment of error is overruled.

{¶38} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
MARY J. BOYLE, J., CONCUR