Please note: We have sua sponte removed this case from the accelerated calendar.
DECISION.
Defendant-appellant George L. Jorden was charged with domestic violence in violation of R.C. 2919.25(A)[1] for injuries he allegedly inflicted on his daughter, Latasha Elgin, and her mother, Mary Elgin.[2]
The evidence presented by the state at trial established that, on September 11, 1998, at approximately 2:00 a.m., Mary and her daughter Latasha, separately, telephoned 911 to request immediate assistance with regard to a domestic dispute. In response to the calls, Officers Angela Smith and Bob Litman were dispatched to the scene. There they encountered Mary and Latasha, both of whom were crying. They observed that Mary was bleeding from cuts to her eyelid and lip and that Latasha was bleeding from a cut to one of her fingers. Mary and Latasha indicated to the officers that their injuries were the result of a physical altercation with Jorden. Mary then provided the officers with an address where she believed Jorden could be located. They radioed the information to other officers, who were able to arrest Jorden that same day. Officer Smith then proceeded to the Hamilton County Justice Center, where Jorden was being held, and filed charges against him. While there, Smith spoke with Jorden, who waived his Miranda rights and stated that he had been in a "scuffle" with "Mary" but that he would not have hurt his "baby girl."
Jorden was found guilty of both charges and was sentenced to a term of incarceration. Jorden appeals the trial court's judgment and raises eight assignments of error.
In his first, second, and third assignments of error, Jorden asserts that the trial court erred in overruling his objections to the testimony of Officers Smith and Litman regarding the statements made to them by Mary and Latasha at the scene. He contends that, contrary to the trial court's ruling, these statements did not constitute excited utterances and, thus, should have been excluded as hearsay. We disagree.
Pursuant to Evid. R. 803(2), "excited utterances" are not excluded as hearsay under Evid. R. 802 and may be admitted for the truth of the matter asserted. Evid.R. 803(2) defines an excited utterance as "a statement relating to a startling event or condition made while the declarant was under stress or excitement caused by the event or condition." An out-of-court statement is admissible as an excited utterance under the following circumstances:
 there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still her reflective faculties and thereby make her statements and declarations the unreflective and sincere expressions of his actual impressions and beliefs, the statement, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose domination over her reflective faculties, so that such domination continued to remain sufficient to make her statements the unreflective and sincere expression of her actual impressions and beliefs; the statement related to the startling occurrence or circumstances of the startling occurrence; and the declarant had an opportunity to observe personally the matters asserted in her statement.[3]
We conclude that the evidence before the trial court in the instant case was sufficient to support a conclusion that Mary's and Latasha's statements constituted excited utterances under Evid. R. 803(2). The statements were made to officers who had responded to the scene directly following the 911 calls while Mary and Latasha were still visibly distraught as a result of the preceding events. Further, the statements related to the "startling occurrence" and concerned matters personally observed by Mary and Latasha. Accordingly, we conclude that the trial court did not err in overruling Jorden's objections to the admissibility of these statements. We, therefore, overrule the first, second, and third assignments of error.
In his fourth assignment of error, Jorden asserts that the trial court erred in admitting into evidence the tape recording of the 911 calls. Because we conclude that this tape recording, like Mary's and Latasha's statements, was properly admitted as an excited utterance under Evid.R. 803(2), we overrule this assignment or error.
In his sixth assignment of error, Jorden asserts that Officer Smith's in-court identification of him as the perpetrator was made in violation of his Fourteenth Amendment due-process rights, because it was unreliable. According to Jorden, the identification was unreliable because the officer only had the opportunity to view him after he had been arrested and did not observe him at the scene of the crime.
We disagree with Jorden's characterization of Officer Smith's in-court identification. The record demonstrates that this identification consisted of her testimony that the man she saw in court was the same man whom she had observed and spoken with at the Justice Center several weeks earlier. In this context, there is no question that the identification was reliable. Accordingly, we overrule the sixth assignment of error.
In his seventh assignment of error, Jorden asserts that the trial court erred in admitting into evidence his statements made to Officer Smith at the Justice Center. He contends that because counsel was not present when he made these statements, his Sixth Amendment right to counsel was violated. For the following two reasons, we reject this assignment.
First, Jorden neither moved to suppress the statements prior to trial, as required by Crim. R. 12(B)(3), nor objected to their admission at trial. Given this, he waived any error committed by the trial court in admitting them into evidence. Second, because Jorden had not yet been arraigned when he made the statements, his Sixth Amendment right to counsel had not yet attached.[4] He did, however, have a Fifth Amendment right to have counsel present during the interrogation to guard against self-incrimination.[5] But the record reflects that Officer Smith advised Jorden of his Miranda rights before she took his statements and that he waived those rights. Accordingly, we overrule the seventh assignment or error.
Jorden asserts, in his fifth and eighth assignments of error, that there was insufficient evidence to support his conviction and that his conviction was against the weight of the evidence. He offers three arguments in support of these assignments.
First, he contends that the state failed to adduce sufficient evidence to prove that he was the individual who committed the alleged criminal acts. Jorden essentially takes issue with the propriety of Officer Smith's in-court identification of him as the perpetrator. It was not, however, Officer Smith's identification of Jorden that established his identity as the perpetrator, as she merely testified that he was the same man she had interviewed at the justice center. Rather, it was Jorden's own admission that he had been involved in a "scuffle" with Mary, in combination with Mary's and Latasha's statements, that provided the court with a sufficient basis for concluding that he was the perpetrator. Accordingly, we reject this argument.
Next, Jorden asserts that the state failed to prove that he "knowingly" caused physical harm to his daughter Latasha. Given the facts and circumstances surrounding Latasha's injuries, we conclude that the trial court could reasonably have found that Jorden had acted knowingly. Therefore, we reject this argument.
Jorden presents one final argument that warrants additional discussion. He contends that the state failed to prove that either Mary or Latasha was a "family or household member" under the domestic-violence statute.
R.C. 2919.25(A) prohibits one from "knowingly caus[ing] or attemp[ting] to cause physical harm to a family or household member." Section (E) of the statute provides the following definition:
"Family or household member" means any of the following:
 Any of the following who is residing or has resided with the offender:
 (i) A spouse, a person living as a spouse, or a former spouse of the offender;
 (ii) A parent or a child of the offender, or another person related by consanguinity or affinity to the offender;
 (iii) A parent or child of a spouse, person living as a spouse, or former spouse of the offender, or another person related by consanguinity or affinity to a spouse, person living as a spouse, or former spouse of the offender.
 The natural parent of any child of whom the offender is the other natural parent. [Emphasis added.]
Here, because neither Mary nor Latasha testified at trial, the state's evidence consisted of only the 911 recordings, the testimony of the police officers, and Jorden's statements at the justice center. Although this evidence demonstrated that Jorden and Mary were Latasha's "natural parents," it in no way established or even provided a basis for inferring that Jorden had ever resided with Mary or Latasha. This lack of proof was not fatal to the charge involving Mary, because the other natural parent of any child of the offender qualifies as a "family or household member" under R.C. 2929.25(E)(1)(b), irrespective of whether that individual has ever resided with the offender. The same, however, is not true with respect to the charge involving Latasha. R.C. 2929.25(E)(1)(a)(ii) provides that the child of an offender is a "family or household member" only if the child and the offender currently reside together or have resided together in the past. Because no proof of Latasha's residence with Jorden was offered by the state, the trial court should not have found, with respect to the charge involving her, that the element of harm to a "family or household member" had been proved beyond a reasonable doubt.[6]
Accordingly, we must conclude that Jorden was erroneously convicted of domestic violence as he stood charged with respect to the assault on Latasha. But that conclusion does not preclude a conviction for the lesser-included offense of disorderly conduct under R.C. 2917.11(A)(1).[7] On the state of this record, the trial court necessarily found Jorden guilty of the lesser-included offense when it made its findings on the charged offense of domestic violence, and a judgment should have been entered accordingly.
We therefore reverse the trial court's judgment to the extent that it convicts Jorden of domestic violence in connection with the assault on Latasha, and we remand this cause for the entry of an appropriate conviction for the minor-misdemeanor offense of disorderly conduct.[8] With respect to the separate conviction arising from the assault on Mary, the trial court's judgment is affirmed.
Judgment affirmed in part and reversed inpart, and cause remanded.
 Gorman, P.J., Sundermann and Shannon, JJ.
Raymond E. Shannon, retired, of the First Appellate District, sitting by assignment.
Please Note:
The court has placed of record its own entry in this case on the date of the release of this Decision.
[1] The charges against Jorden were maintained under two separate trial numbers but were tried jointly. For purposes of judicial economy, we hereby consolidate Jorden's appeals and dispose of both in this decision.
[2] Because these individuals share the same last name, we hereinafter refer to them by their respective first names.
[3] Potter v. Baker (1955), 162 Ohio St. 488, 124 N.E.2d 140.
[4] See State v. Broom (1988), 40 Ohio St.3d 277,533 N.E.2d 682; State v. Kleingers (June 25, 1999), Hamilton App. No. C-980764, unreported.
[5] See Kleingers, supra.
[6] See State v. Thompkins (1997), 78 Ohio St.3d 380,678 N.E.2d 541.
[7] See State v. Harris (1996), 109 Ohio App.3d 873,673 N.E.2d 237.
[8] The record does not demonstrate whether Jorden has yet served the original sentence for this assault. If he has, given that the conviction has been reduced to a minor misdemeanor, no additional sentence may be imposed; the trial court may simply correct it records and direct the clerk to do likewise.