[Cite as *State v. McGee*, 2016-Ohio-7510.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO


STATE OF OHIO,                              :        APPEAL NO. C-150496
                                                     TRIAL NO. B-1307027
      Plaintiff-Appellee,         :

  vs.                                  :

                                                     *O P I N I O N.*
MARK MCGEE,                                 :

      Defendant-Appellant.        :



Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed and Cause Remanded

Date of Judgment Entry on Appeal:  October 28, 2016


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Judith Anton Lapp*,
Assistant Prosecuting Attorney, for Plaintiff-Appellee,


*The Farrish Law Firm* and *Michaela Stagnaro*, for Defendant-Appellant.

**FISCHER, Presiding Judge.**

{¶1} Defendant-appellant Mark McGee appeals his convictions for voluntary manslaughter, carrying a concealed weapon and tampering with evidence. McGee's convictions resulted from an altercation with his mother's ex-boyfriend, Marshall Frazier, in which McGee shot and killed Frazier with a single gunshot to the chest. Because we determine that McGee's challenges to his convictions are without merit, we affirm McGee's convictions; however, we remand the matter to the trial court to correct a clerical error in the judgment entry.

### Background Facts and Procedural Posture

{¶2} In 2013, McGee's mother, Adrienne Jackson, dated Frazier and lived with him in his apartment until the two ended their relationship. Jackson then moved in with McGee and his girlfriend, Christina Patterson. On November 22, 2013, Frazier called and texted Jackson and her family members requesting that Jackson immediately retrieve her personal papers from his home. Phone records showed that Frazier called Jackson 46 times that evening.

{¶3} Just before 10 p.m., Frazier called 911 and told the operator that McGee had threatened over the phone to kill him, and that McGee was on his way to Frazier's apartment. Frazier told the operator, "It's either gonna be me or him killing." When the operator asked Frazier if he could wait safely somewhere else until police arrived, Frazier answered negatively. The operator then stated, "[Y]ou're gonna go to where the person is threatening to kill you?" Frazier responded affirmatively. The operator then stated, "Does that sound like a safe idea to you?" Frazier then stated, "Nah. But whatever happens, happens." Frazier also told the operator that he believed McGee carried guns.

{¶4} Four minutes after Frazier called 911, Frazier's neighbor, Gerian Napier, called 911 to report a shooting. Napier, her now-husband, Kadeem Johnson, and their daughter had been inside their apartment across the hall from Frazier's apartment, when they had heard a loud banging on the door. Johnson looked through the peephole of his front door and saw a man banging on Frazier's apartment door. The man yelled, "Open the damn door." Johnson heard another man say, "I thought the door was already open." The man inside Frazier's apartment opened the door and within a second to a second-and-a-half, the man standing in the hallway shot the man standing inside the doorway. Johnson then grabbed his daughter and Napier, and they ran to the back of their apartment. Johnson looked out of his bedroom window and saw a man and a woman. The man was "favoring his left side." Johnson saw the man and woman get into a Chevrolet Impala and drive away.

{¶5} Napier and Johnson then opened their apartment door and saw Frazier lying on the landing, half-a-flight of steps down from his door. Officer Douglas White arrived a short time later and found Frazier lying on his stomach, in his stocking feet. Frazier had a ten-inch kitchen knife in his right hand. Testing would later show no blood on the knife, only an unidentified mixture of DNA. The paramedics arrived and attempted to revive Frazier, but could not.

{¶6} Meanwhile, McGee rode to Good Samaritan Hospital in a Chevrolet Impala for treatment of a stabbing wound, where police uncovered the relationship between McGee and Frazier. Cincinnati Police Detective Keith Witherell interviewed McGee at the hospital, and later continued the interview at police headquarters. McGee told Officer Witherell that he had driven his mother over to Frazier's

3

apartment that night, and that he had gone up to the apartment door to check on his mother. He had knocked on Frazier's door, and as soon as the door opened, Frazier had stabbed him. McGee then had turned around, attempting to flee, and Frazier had pursued him down the stairs. After McGee had run down the second flight of stairs, Frazier had tried to stab him again, and McGee had then shot Frazier.

{¶7} The police took McGee into custody in conjunction with Frazier's shooting. McGee later testified in front of the grand jury that he had rented a gun from an associate on November 22, 2013, because he had feared for his mother's safety. McGee testified that he did not think the gun had any bullets in it. McGee stated that he had waited in the car while his mother went up to Frazier's apartment to retrieve her papers, and that after six to ten minutes, he heard noises and decided to go check on her. McGee reiterated that Frazier had attacked him with the knife first, and that he had shot at Frazier while trying to flee.

{¶8} The grand jury returned an indictment for murder and two counts of felonious assault, accompanied by firearm specifications, two counts of carrying concealed weapons, and tampering with evidence. The matter proceeded to a bench trial.

{¶9} At trial, the state presented testimony from the 911 operator who took Frazier's phone call on November 22, Officer White, Officer Witherell, Napier, and Johnson. The state also presented testimony from a forensic pathologist who examined Frazier's body. The pathologist determined that Frazier had been shot in the chest and that the bullet had exited from the left side of his back. Frazier had been shot at a downward angle. The pathologist determined that the bullet would not have been instantly fatal and that Frazier could have taken several steps before

4

losing enough blood to cause him to fall. The state also presented testimony from Officer Dave Landesburg, who had examined the crime scene and determined that the bullet that had gone through Frazier's body had ricocheted off a wall, through a closet door, and then had hit another wall before coming to a stop. Officer Landesburg determined that the bullet's trajectory was consistent with Frazier having stood in the doorway of his apartment when he was shot.

{¶10} Patterson, McGee's girlfriend, was the sole defense witness. She testified as to the harassing texts and phone calls from Frazier. According to Patterson, Frazier believed that Jackson had cheated on him. Patterson stayed home while McGee took Jackson to Frazier's apartment to pick up her belongings. Patterson testified that the two returned home, and that she drove McGee to the hospital.

{¶11} The trial court found McGee not guilty of murder, but guilty of the inferior-degree offense of voluntary manslaughter, and guilty as to all the remaining counts. The trial court sentenced McGee to a total of 18 years and six months in prison. McGee appeals.

### *Admission of Alleged Hearsay*

{¶12} In his first assignment of error, McGee argues that the trial court erred as a matter of law by permitting the admission of hearsay evidence. McGee argues that Frazier's statements to the 911 operator were hearsay and did not qualify under a hearsay exception. *See* Evid.R. 803(1). McGee further argues that even if the statements were admissible under a hearsay exception, the admission violated his Sixth Amendment right to confront the witnesses against him. *See Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). In addition,

McGee argues that the trial court erred by admitting hearsay testimony from Officer Witherell in which he stated that McGee's mother had told him that Frazier had never been violent with her.

{¶13} Because McGee failed to object to the admission of the statements during trial, this court reviews them for plain error. *See* Crim.R. 52(B). Plain error does not exist unless it can be said that, but for the error, the outcome of the proceeding clearly would have been otherwise. *State v. Moreland*, 50 Ohio St.3d 58, 62, 552 N.E.2d 894 (1990).

{¶14} As to Frazier's statements to the 911 operator, the state contends that his statements were admissible as an "excited utterance" under Evid.R. 803(2). We agree. An "excited utterance" is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2). We have explained that an excited utterance can be made after a startling event, not necessarily contemporaneously with such event, as long as the circumstances reasonably show that the declarant made the statement without reason or reflection. *See State v. Jorden*, 134 Ohio App.3d 131, 134, 730 N.E.2d 447 (1st Dist.1999); *State v. Combs*, 1st Dist. Hamilton No. C-120756, 2013-Ohio-3159, ¶ 27.

{¶15} Here, McGee's threat to kill Frazier qualifies as a startling event. The record does not indicate exactly how much time had elapsed between McGee's threat and Frazier's 911 call; however, a review of Frazier's 911 call shows that Frazier had still been under stress from McGee's threat at the time of the call. Frazier could not remember his apartment number when he speaking to the 911 operator, and he told

6

the operator to have emergency services "[g]et here on the double." Thus, we determine that the 911 statement was admissible as an excited utterance.

{¶16} Furthermore, the admission of Frazier's statements to the 911 operator did not violate McGee's Sixth Amendment right to confront the witnesses against him. The Confrontation Clause bars out-of-court statements that are testimonial, unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant. *See Crawford*, 541 U.S. at 61, 124 S.Ct. 1354, 158 L.Ed.2d 177. Testimonial statements are " 'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' " *State v. Williams*, 1st Dist. Hamilton No. C-140199, 2015-Ohio-3968, ¶ 26-27, quoting *Crawford* at 52. Statements made in response to questioning by a 911 operator are nontestimonial where the "primary purpose" of the statements is to obtain assistance in an emergency. *See State v. Siler*, 116 Ohio St.3d 39, 2007-Ohio-5637, 876 N.E.2d 534, ¶ 24-25, citing *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).

{¶17} The record demonstrates that the primary purpose of Frazier's statements to the 911 operator was to obtain police assistance in an ongoing emergency. Frazier's statements did not explain a past event, but rather described a present, hostile situation in which Frazier anticipated that McGee would arrive at his home within minutes, McGee carried weapons, and McGee had threatened Frazier's life. Frazier requested immediate police assistance for the situation. Therefore, we conclude that the admission of the 911 statements did not violate McGee's Sixth Amendment rights.

{¶18} With regard to the statement by McGee's mother to Officer Witherell that Frazier had not been violent toward her, we determine that the admission of that statement does not rise to the level of plain error. Initially, we note that we presume that the trial court in a bench trial considered only admissible evidence. *State v. Strohm*, 1st Dist. Hamilton Nos. C-060056, C-060057 and C-060058, 2006-Ohio-6161, ¶ 24. Even if the trial court had relied on McGee's mother's statement, overwhelming evidence in the record indicates that McGee had been the aggressor, including an independent witness who stated that Frazier had been shot as soon as he opened his door, and forensic evidence introduced to show that Frazier had been standing in the doorway when he was shot. Furthermore, McGee's mother's statement was merely cumulative of other evidence, including McGee's statement to the grand jury that he did not know of any time where Frazier had been violent with his mother. *See State v. Thomas*, 1st Dist. Hamilton Nos. C-130620, C-130621, C-130622, C-130623 and C-130624, 2014-Ohio-2803, ¶ 21 (finding harmless error where the evidence was cumulative of other evidence). Therefore, no plain error occurred in admitting McGee's mother's statement to Officer Witherell.

{¶19} We overrule the first assignment of error.

### Ineffective Assistance of Counsel

{¶20} In his second assignment of error, McGee argues that he was denied the effective assistance of counsel, because counsel failed to object to the hearsay statements McGee complains of within his first assignment of error.

{¶21} In order to succeed on a claim for ineffective assistance of counsel, the defendant must demonstrate that counsel's performance was deficient, meaning that counsel's representation fell below an objective standard of reasonableness.

8

*Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We presume that counsel rendered competent assistance, and the defendant must overcome the presumption that counsel's challenged actions were a matter of sound trial strategy. *State v. Hackney,* 1st Dist. Hamilton No. C-150375, 2016-Ohio-4609, ¶ 36-37.

{¶22} McGee has not overcome the strong presumption that counsel rendered effective assistance. The failure by McGee's counsel to object to the 911 statements did not fall below an objective standard of reasonableness, because, as we have found, the statements were admissible. The failure by McGee's counsel to object to the statements in Officer Witherell's testimony regarding McGee's mother can be viewed as sound trial strategy, because the statements would otherwise be admitted in McGee's grand jury testimony, and because the trial court acted as the factfinder, not a jury. Furthermore, the failure of McGee's trial counsel to object to the hearsay statements did not prejudice the outcome of McGee's case. *See State v. Finnell*, 1st Dist. Hamilton Nos. C-140547 and C-140548, 2015-Ohio-4842, ¶ 50.

{¶23} We overrule the second assignment of error.

### Sufficiency and Manifest Weight of the Evidence

{¶24} In his third assignment of error, McGee argues that the trial court erred in convicting him of carrying a concealed weapon under R.C. 2923.12(A) and tampering with evidence under R.C. 2921.12(A)(1), because the evidence was insufficient as a matter of law to support those convictions and they were against the manifest weight of the evidence.

{¶25} In a challenge to the sufficiency of the evidence, the question is whether, after viewing the evidence in the light most favorable to the state, any

rational trier of fact could have found all the essential elements of the crime proved beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. When considering a challenge to the weight of the evidence, the court must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶26} With regard to his conviction for carrying a concealed weapon, McGee argues that no evidence was adduced at trial to show that he had concealed a handgun. A gun is "concealed" as that term is used in R.C. 2923.12 if it is "so situated not to be discernible by ordinary observation by those near enough to see it if it were not concealed[.]" *State v. Davis*, 15 Ohio App.3d 64, 64-65, 472 N.E.2d 751 (1st Dist.1984), quoting *State v. Pettit*, 20 Ohio App.2d 170, 173-174, 252 N.E.2d 325 (4th Dist.1969). "Even a partially concealed gun can be found to be 'concealed' under R.C. 2923.12." *In re M.M.*, 1st Dist. Hamilton Nos. C-140628, C-140629, C-140630 and C-140631, 2015-Ohio-3485, ¶ 16, citing *State v. Almalik*, 41 Ohio App.3d 101, 534 N.E.2d 898 (8th Dist.1987).

{¶27} McGee argues that, at most, the evidence shows that McGee had the gun in his back pocket when he approached Frazier's apartment, and that a "majority" of the gun would have been sticking out of his pocket. However, McGee told police that he had kept the gun in his back pocket until Frazier opened his apartment door, and that he had been wearing a large coat at the time. We determine that this is sufficient evidence to support the trial court's finding that the

handgun was concealed, and because no evidence was offered to contradict this portion of McGee's statement, his conviction is not against the manifest weight of the evidence. *See Jenks* and *Thompkins.*

{¶28} As to his conviction for tampering with evidence under R.C. 2921.12(A)(1), McGee argues that the state failed to prove that he had the specific intent to impair the gun's availability as evidence. R.C. 2921.12(A)(1) provides that "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation." R.C. 2921.12(A)(1). Tampering with evidence requires a person to act with purpose, meaning that the person has a specific intention to cause a certain result, and that purpose is generally shown by circumstantial evidence. *State v. Jackson*, 1st Dist. Hamilton No. C-140178, 2014-Ohio-5008, ¶ 15. Sufficient evidence exists to support a tampering-with-evidence conviction where a defendant hides a gun used in a shooting immediately after the incident. *See State v. Hill*, 10th Dist. Franklin No. 15AP-928, 2016-Ohio-5205, ¶ 5; *State v. Dantzler*, 10th Dist. Franklin Nos. 14AP-907 and 14AP-908, 2015-Ohio-3641, ¶ 36.

{¶29} McGee's specific intent to impair the investigation after the shooting can be inferred from the fact that police could not find the gun at Frazier's apartment, and from McGee's statement to police. McGee refused to tell police a consistent story when asked what he had done with the gun after the shooting. McGee told police that he had dropped the gun in the apartment building, and later told police that he had left the gun in his house. McGee then told police that he had

11

left the gun on Craft Street and that an associate had picked it up. We determine that sufficient evidence exists to support McGee's tampering-with-evidence conviction, and it is not against the manifest weight of the evidence.

{¶30} We overrule the third assignment of error.

### *Sentencing*

{¶31} Finally, in his fourth assignment of error, McGee makes several challenges to his sentence. McGee argues that the trial court: (1) failed to make consecutive-sentencing findings required under R.C. 2929.14(C); (2) imposed maximum, consecutive prison terms without properly considering the principles and purposes of sentencing in R.C. 2929.11 and 2929.12; (3) failed to notify him of the requirement to submit to DNA testing under R.C. 2901.07(B)(1); and (4) erroneously entered on its journal entry that McGee had been convicted of murder when he had been convicted of voluntary manslaughter.

{¶32} We will not reverse a felony sentence unless we clearly and convincingly find that either the record does not support the mandatory sentencing findings or the sentence is otherwise contrary to law. *See* R.C. 2953.08(G)(2); *State v. White*, 2013-Ohio-4225, 997 N.E.2d 629, ¶ 11 (1st Dist.). As to the consecutive nature of McGee's sentences, the trial court made the appropriate consecutive-sentencing findings at the hearing and in the sentencing entry. *See State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659. McGee contends that the trial court cannot merely recite the statutory language in R.C. 2929.14(C) to justify the imposition of consecutive sentences. But, the Supreme Court in *Bonnell* explicitly stated that the trial court need not give any reasons to support its findings. *See State*

*v. Simmons*, 2014-Ohio-3695, 19 N.E.3d 517, ¶ 116 (1st Dist.), citing *Bonnell* at syllabus. Therefore, the trial court did not err in imposing consecutive prison terms.

{¶33} As to the length of the prison terms, although a trial court must consider the overriding principles and purposes of felony sentencing in R.C. 2929.11 and 2929.12, it is not required to state specific findings on the record, and thus we can presume that a court considered the appropriate factors. *State v. Hendrix*, 1st Dist. Hamilton Nos. C-150194 and C-150200, 2016-Ohio-2697, ¶ 51, citing *State v. Alexander*, 1st Dist. Hamilton Nos. C-110828 and C-110829, 2012-Ohio-3349, ¶ 24. The trial court stated on the record that it had considered the principles and purposes of sentencing, and discussed its reasons for imposing its sentence at the sentencing hearing. Therefore, McGee has not shown that the trial court erred in sentencing him to 18 years and six months in prison.

{¶34} With regard to the trial court's failure to notify McGee that he would be subject to DNA testing, this court has held that R.C. 2901.07(B)(1) confers no substantive right, and that the failure to notify a defendant regarding DNA testing constitutes harmless error. *See State v. Taylor*, 1st Dist. Hamilton No. C-150488, 2016-Ohio-4548.

{¶35} Finally, McGee contends that his judgment entry of conviction should be corrected to reflect that the trial court found McGee guilty of voluntary manslaughter and not murder in Count 1. The state concedes this error, and we agree. Because the error is merely clerical, however, it can be corrected with a nunc pro tunc entry. *See* Crim.R. 36.

{¶36}   Therefore, we overrule McGee's fourth assignment of error, except as to the nunc pro tunc correction on Count 1 describing the offense of which McGee was convicted.

### *Conclusion*

{¶37}   We affirm the judgment of the trial court, but we remand the matter to the trial court to enter a nunc pro tunc judgment entry reflecting that McGee was convicted of voluntary manslaughter and not murder.

*Judgment affirmed and cause remanded.*

MOCK, J., concurs.
DEWINE, J., concurs separately.

DEWINE, J., concurring separately.

{¶38}   I concur in judgment and with the majority's opinion with the exception of ¶ 16.  The proper framework to analyze the Confrontation Clause issue is that set forth by the United States Supreme Court in its recent opinion, *Ohio v. Clark*, ___ U.S. ___, 135 S.Ct. 2173, 192 L.Ed.2d 306 (2015).  Here, because "the 'primary purpose' of [Frazier's conversation with the 911 operator] was [not] to 'creat[e] an out-of-court substitute for trial testimony,' " there was no Confrontation Clause violation.  *Id.* at 2180, quoting *Michigan v. Bryant*, 562 U.S. 344, 358, 131 S.Ct. 1143, 179 L.Ed.2d 93 (2011).

Please note:
 The court has recorded its own entry on the date of the release of this opinion.