[Cite as *State v. Shirley*, 2019-Ohio-1888.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                           :

    Plaintiff-Appellee,           :

                                            No. 107449

v.                                       :

JAMES SHIRLEY,                           :

    Defendant-Appellant.          :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED AND REMANDED
**RELEASED AND JOURNALIZED:** May 16, 2019

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-625033-A

---

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Mary M. Frey, Assistant Prosecuting Attorney, *for appellee.*

Patrick Leary, *for appellant.*


KATHLEEN ANN KEOUGH, J.:

{¶ 1} Defendant-appellant, James Shirley, appeals from the trial court's judgment, rendered after a bench trial, finding him guilty of having a weapon while under disability, possessing a defaced firearm, tampering with evidence, obstructing official business, and falsification, and sentencing him to an aggregate term of 60

months in prison. We affirm the trial court's judgment but remand for the trial court to enter a nunc pro tunc sentencing entry that correctly reflects the statutory findings made by the trial court at sentencing in imposing consecutive sentences.

## I. Background

{¶ 2} In January 2018, a Cuyahoga County Grand Jury charged Shirley in a six-count indictment with (1) improperly discharging a firearm at, in, or into a school safety zone, with one- and three-year firearm specifications, and notice of prior conviction and repeat violent offender specifications; (2) having a weapon while under disability; (3) possessing a defaced firearm; (4) tampering with evidence; (5) obstructing official business; and (6) falsification. All counts also carried a forfeiture of weapon specification. The charges arose out of an incident that occurred on January 11, 2018.

{¶ 3} Tamara Ivory testified at trial that she was driving near Miles Elementary School in Cleveland at approximately 8:30 a.m. on January 11, 2018. While she was stopped at the traffic light at the intersection of Miles Avenue and East 123rd Street, she saw a male cross the street directly in front of her car. Ivory said that as the male walked across the street, he removed a gun from under his shirt, and when he reached the other side of the street, he randomly started shooting. Ivory said that the male first shot down East 123rd Street, and then he turned and started shooting in the direction of Miles Elementary School.

{¶ 4} Ivory testified that she got a "good look" at the male, who was wearing all black, including a black hoodie, but who appeared "to not be [in] his proper state

of mind." She said the gun "looked like a 9-millimeter gun, all black, probably compact." Ivory testified that after the incident, the male walked up East 123rd Street, and she immediately called 911.

{¶ 5} The 911 recording of Ivory's call was played in court. Ivory reported to the dispatcher that there was a male "shootin' on the corner" of East 123rd Street and Miles Avenue, near Miles Elementary School, and described the male who was shooting as light-skinned, in his late 20's, with a beard and mustache, and wearing all black, including a black hoodie. She also described the gun the male had as a 9 mm chrome gun.

{¶ 6} Ivory agreed that the 911 recording was a true and accurate recording of her 911 call. She testified that when she told the dispatcher that the gun was chrome, she meant that it was silver. She testified further that after listening to the 911 call, she remembered that the shooter's gun was chrome, not black. On cross-examination, she testified that listening to the 911 call "definitely recall[ed] and spark[ed] her memory" about the gun, and "if it's on the tape, yes, it was chrome."

{¶ 7} Ivory testified that the police contacted her between 9:00 a.m. and 10:00 a.m. that same morning and advised her they had apprehended a suspect. Ivory then participated in a cold stand identification near where the suspect had been apprehended. Shirley stood outside the police zone car while Ivory was across the street. Ivory testified that the male the police had apprehended looked "exactly as the person" she had seen shooting earlier that morning, and she had "no doubt" he was the person she had seen shooting. Ivory then identified Shirley in court as

the male who had crossed in front of her car and started shooting; she testified she was also certain he was the same person she had identified for the police on January 11, 2018.

{¶ 8} Cleveland Police Sergeant John Ball testified that he responded on January 11, 2018, to the call of shots fired near Miles Elementary School. He said that he had a description of the suspect, and arrived in the vicinity of East 119th Street and Miles Avenue within a few minutes of receiving the call. He asked several children in the area if they had seen anyone running or shooting and, based on what they told him, he drove around the block and headed southbound on East 119th Street. Ball said that he saw a male who fit the suspect's description by a fence behind a garage; the man was bending down as if he were placing something on the ground. When Ball told the man to show his hands, he jumped over the fence and ran away. Ball caught up with the man, and as Ball pointed his gun at him and ordered him to stop, other officers arrived and handcuffed him. Ball identified Shirley in court as the male he and the other officers apprehended on January 11, 2018.

{¶ 9} Ball testified that he then asked several police officers who were at the scene to retrace the male's steps to look for contraband. Ball said that within five minutes, the officers found a gun and keys at the same location where Ball had seen the male bending over putting something down. The gun was found in a bucket, slightly obscured by leaves, and the keys were found on a piece of wood by the garage, several feet away from the bucket. Ball testified that the gun was loaded, and

its serial number, which would normally be on the barrel of the gun, had been ground off.

{¶ 10} Cleveland Police Officer Jarrel Miller testified that he arrived on the scene as the suspect was being handcuffed. He said that the suspect, who matched the description given by dispatch, told the police his name was Rashaun Tyler, and denied that the gun and keys belonged to him. Using the name and date of birth that the suspect provided, the officers found an address for Rashaun Tyler. When they went to that address, they determined that the keys recovered by the police unlocked the door to the upstairs unit. A man answered the door and told them that Rashaun Tyler lived there but was not home. The officers eventually learned that the apprehended suspect's name was actually James Shirley.

{¶ 11} Cleveland Police Officer Devan Wynn, who conveyed Shirley to jail, testified that Shirley eventually admitted that the keys were his but maintained even during booking that his name was Rashaun Tyler. Officer Wynn said the police eventually identified Shirley based on his fingerprints.

{¶ 12} Cleveland Police Detective Antonio Curtis testified that he investigated the case. During his investigation, he learned there was a possibility the church across the street from where the shooting had occurred had video surveillance footage of the incident but Curtis said he was unable to contact anyone at the church to secure any video. He admitted that a gunshot residue test was not done on Shirley, and no one tested the gun for DNA or fingerprints. He also

admitted that no DNA or fingerprint testing was done on a shell recovered from the scene.

{¶ 13} Shirley presented no evidence in his defense. After denying Shirley's Crim.R. 29(A) motion for acquittal, the court found him not guilty of Count 1, improperly discharging a firearm at, in, or into a school safety zone, but guilty of the remaining charges and specifications. The trial court sentenced Shirley to time served for the misdemeanor offenses in Counts 3, 5, and 6 — possessing a defaced firearm, tampering with evidence, and falsification. The court sentenced Shirley to 30 months each on Counts 2 and 4, having a weapon while under disability and tampering with evidence, and ordered that the sentences be served consecutively for a total prison term of 60 months. This appeal followed.

## II. Law and Analysis

### A. Sufficiency of the Evidence

{¶ 14} In his first assignment of error, Shirley asserts that the trial court erred in denying his Crim.R. 29(A) motion for acquittal regarding his convictions for having a weapon while under disability, possessing a defaced firearm, and tampering with evidence. He makes no argument regarding his convictions for obstructing official business and falsification, and thus has waived any sufficiency challenge regarding those convictions.

{¶ 15} A Crim.R. 29(A) motion challenges the sufficiency of the evidence. Under Crim.R. 29(A), after the evidence on either side is closed, the court shall order the entry of a judgment of acquittal of one or more offenses charged in the

indictment if the evidence is insufficient to sustain a conviction of the offense or offenses.

{¶ 16} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 17} R.C. 2923.13(A)(2), regarding having weapons while under disability, provides that "[n]o person shall knowingly, acquire, have, carry, or use any firearm or dangerous ordnance, if * * * the person * * * has been convicted of any felony offense of violence * * *." Shirley does not dispute that he was convicted of a prior offense of violence; at trial, the parties stipulated to his 2014 conviction for robbery with a one-year gun specification in Cuyahoga C.P. No. CR-14-583878. (Tr. 65.)

{¶ 18} Instead, Shirley contends that the state failed to link the gun retrieved from the bucket to him. He argues that Ivory's description of the shooter to the 911 dispatcher "could have been any number of people in the area," and her identification of him from the cold stand was unreliable because she was across the street from where he was standing. He further contends the cold stand was impermissibly suggestive because Ivory was shown a lone black male standing outside a police car. Finally, he contends there was insufficient evidence to support

his conviction for having a weapon while under disability because there was no DNA or fingerprint evidence linking him to the gun.

{¶ 19} Shirley's arguments have no merit. Ivory called 911 almost immediately after she witnessed Shirley pull out a firearm as he crossed the street in front of her car and begin shooting the gun. She gave a very specific description of the shooter to the 911 dispatcher, describing him as light-skinned, in his late 20's, with a beard and mustache, and wearing all black, including a black hoodie. Furthermore, Ivory was consistent in her identification of Shirley as the male she saw shooting on the morning of January 11, 2018. She identified him in the cold stand within approximately one hour of the shooting, and during trial, she testified that she had no doubt Shirley was the person she saw shooting a gun on January 11, 2018. With respect to the alleged impermissible suggestiveness of the cold stand, Ivory specifically testified that she "definitely" would have told the police if she had any doubt that the man she observed across the street was not the shooter.

{¶ 20} Shirley's argument that the evidence was insufficient because there was no DNA or fingerprint evidence linking him to the gun is similarly unavailing. Sgt. Ball testified that he saw Shirley bending down near the fence by the garage as if he were placing something on the ground, and when he ordered him to show his hands, Shirley fled. Within only five minutes of Shirley's apprehension, the police found a gun in the same location where Ball saw him bending over. There was no need for DNA or fingerprint testing; the circumstantial evidence that Shirley placed the gun in the bucket was sufficient to link him to the firearm. Furthermore, Ivory's

description of the gun as chrome matched the gun retrieved from the bucket, which was chrome/silver on top with a black bottom and handle. Accordingly, there was sufficient evidence to support Shirley's conviction for having a weapon while under disability.

{¶ 21} There was also sufficient evidence to support Shirley's conviction for possessing a defaced firearm. R.C. 2923.201(A)(2) provides that "[n]o person shall * * * possess a firearm knowing or having reasonable cause to believe that the name of the manufacturer, model, manufacturer's serial number, or other mark of identification on the firearm has been changed, altered, removed, or obliterated." Shirley contends there was no evidence linking him to the firearm and further, that even if there were, the state failed to present evidence that he knew or had reasonable cause to believe that the serial number on the gun had been removed.

{¶ 22} We have already concluded there was sufficient evidence linking Shirley to the gun. With respect to Shirley's knowledge that the serial number on the gun had been removed, Sgt. Ball testified that the serial number would have been on the exterior of the gun, at the slide and on the barrel, if it had not been ground off. He testified further that the firearm the police recovered was loaded, and there was a round in the chamber of the gun. This evidence, coupled with Ivory's testimony that she saw Shirley shoot the gun, is sufficient to demonstrate that Shirley knew or had reason to believe that the serial number on the gun he possessed, and presumably loaded, had obviously been removed.

{¶ 23} With respect to tampering with evidence, R.C. 2921.12(A)(1) provides that "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation." Shirley contends the evidence was insufficient to prove that he altered, destroyed, or concealed evidence because there was no evidence he placed the gun in the bucket to make it unavailable as evidence. We disagree.

{¶ 24} Tampering with evidence requires a person to act with purpose, meaning that the person has a specific intention to cause a certain result. *State v. Sharp*, 8th Dist. Cuyahoga No. 103445, 2016-Ohio-2634, ¶ 19. When determining whether the defendant acted purposely, a defendant's state of mind may be inferred from surrounding circumstances. *Id.*

{¶ 25} Shirley's intent to make the gun unavailable as evidence can be inferred from his attempt to hide the gun in a bucket after the shooting incident. "Sufficient evidence exists to support a tampering-with-evidence conviction where a defendant hides a gun used in a shooting immediately after the incident." *State v. McGee*, 1st Dist. Hamilton No. C-150496, 2016-Ohio-7510, ¶ 5, citing *State v. Hill*, 10th Dist. Franklin No. 15AP-928, 2016-Ohio-5205, ¶ 5, and *State v. Dantzler*, 10th Dist. Franklin Nos. 14AP-907 and 14AP-908, 2015-Ohio-3641, ¶ 36. Moreover, as a convicted felon, Shirley was prohibited from owning or possessing a firearm. When he hid the gun in the bucket and then fled from Sgt. Ball, Shirley was trying to avoid,

at a minimum, a weapons-under-disability charge. Hiding the gun impaired its ability to be used as evidence. Thus, there was sufficient evidence to support Shirley's conviction for tampering with evidence.

{¶ 26} The dissent's assertion that a defendant's attempt to hide a gun must be "coupled with other acts" to support a tampering with evidence conviction is not consistent with the case law. In *Hill*, 2016-Ohio-5205 at ¶ 5, for example, the Tenth District affirmed the defendant's conviction for tampering with evidence, stating, "[t]he tampering with evidence charge was based on [the defendant's] hiding the gun used in the attack immediately after the shooting. This qualifies as tampering with evidence as defined by R.C. 2921.12." Likewise in *Dantzler*, 2015-Ohio-3641 at ¶ 36, the Tenth District affirmed the defendant's conviction for tampering with evidence where a witness testified that he heard two or three gunshots, "and then saw an individual dump an object into a nearby trash can." In *State v. Klein*, 3d Dist. Union No. 14-12-09, 2013-Ohio-2387, the Third District found sufficient evidence to support a tampering with evidence conviction where the defendant "discarded the clothes and gun used during the robbery, as well as the pill bottles, into a gas station dumpster." *Id.* at ¶ 43. And in *State v. Wright*, 9th Dist. Summit No. 25280, 2010-Ohio-5106, the Ninth District held that the defendant's tampering with evidence conviction was not against the manifest weight of the evidence where the defendant "threw his gun into a trash can alongside a nearby side street" as he fled the scene of the shooting. *Id.* at ¶ 15. Here, the fact that Shirley hid the gun in the bucket

immediately after the shooting is sufficient evidence to support his tampering with evidence conviction.

{¶ 27} The first assignment of error is overruled

## B. Manifest Weight of the Evidence

{¶ 28} In his second assignment of error, Shirley contends that his convictions were against the manifest weight of the evidence.

{¶ 29} A manifest weight challenge questions whether the state met its burden of persuasion. *State v. Freeman*, 8th Dist. Cuyahoga No. 106374, 2018-Ohio-3587, ¶ 18. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 388, 678 N.E.2d 541 (1997). An appellate court will reverse a conviction as against the manifest weight of the evidence only in the most exceptional case in which the evidence weighs heavily against the conviction. *Id.*

{¶ 30} Shirley argues that Ivory's testimony at trial that the gun was black "calls into question [her] entire recollection of that morning, as well as the inference that the gun recovered was ever possessed by [him.]" He also contends that the evidence linking him to the recovered firearm is "dubious at best," and that the lack of DNA and fingerprint evidence, or video surveillance footage from the church

across the street from where he was shooting, demonstrate that his convictions were against the manifest weight of the evidence. We disagree.

{¶ 31} Ivory's description to the police and at trial was consistent with what she told the 911 dispatcher, with the exception of her testimony at trial that the gun was black. But after listening to the 911 call, Ivory testified that the call "definitely * * * spark[ed] her memory" about the gun, and she recalled that it was actually chrome. She also testified that "if it's on the tape, yes, it was chrome." Thus, the initial inconsistency in Ivory's testimony about the gun was corrected.

{¶ 32} The record reflects that Ivory was consistent in her description of the shooter and certain about her identification of Shirley as the shooter. Determinations regarding the credibility of witnesses and the weight given to the evidence are primarily matters for the trier of fact to decide. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact is best able to view the witnesses and observe their demeanor and voice inflections, and use these observations in weighing the credibility of the proffered testimony. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24. We afford great deference to the factfinder's determination of witness credibility, *State v. Ball*, 8th Dist. Cuyahoga No. 99990, 2014-Ohio-1060, ¶ 36, and on this record, find nothing to reverse the trier of fact's conclusion that Ivory's testimony about what she saw on the morning of January 11, 2018 was credible.

{¶ 33} We also find that despite Shirley's argument otherwise, the evidence linking him to the firearm, albeit circumstantial, was substantial. Ivory testified that

she saw Shirley shooting a gun. Sgt. Ball testified that only a short time later, he saw Shirley bending over as if he were placing something on the ground, and when he ordered him to show his hands, Shirley fled. Only five minutes after Shirley was apprehended, the police found a gun at the very location where Sgt. Ball had initially seen Shirley. In light of this overwhelming circumstantial evidence connecting Shirley to the firearm, the lack of DNA evidence, fingerprint evidence, or video surveillance from the church is immaterial.

{¶ 34} In addition to the evidence linking Shirley to the gun, the evidence demonstrated that Shirley fled from Sgt. Ball, and when he was apprehended, he gave the police a false name and birthdate. The factfinder was free to interpret Shirley's conduct as indicative of his consciousness of his guilt, and thus of guilt itself. *State v. Santiago*, 8th Dist. Cuyahoga No. 95516, 2011-Ohio-3058, ¶ 30.

{¶ 35} This is not the exceptional case where the evidence weighs heavily against the convictions, and the trial court did not lose its way or create a miscarriage of justice in convicting Shirley. The second assignment of error is therefore overruled.

## C. Consecutive Sentences

{¶ 36} In his third assignment of error, Shirley contends that the trial court erred in imposing consecutive sentences.

{¶ 37} Consecutive sentences may be imposed only if the trial court makes the required findings pursuant to R.C. 2929.14(C)(4). *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 20-22; *State v. Wells*, 8th Dist. Cuyahoga No. 105723, 2017-Ohio-8738, ¶ 2. Under the statute, consecutive sentences may be imposed if the trial court finds that (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the danger the offender poses to the public, and (3) one of the following applies: (a) the offender committed one or more of the multiple offenses while awaiting trial or sentencing, under a sanction, or under postrelease control for a prior offense; (b) at least two of the multiple offenses were committed as part of one or more courses of the conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct; or (c) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 38} In imposing consecutive sentences, the trial court must both make the requisite statutory findings and incorporate those findings into its sentencing entry. *Bonnell* at syllabus.

{¶ 39} In imposing consecutive sentences, the trial court found that (1) consecutive sentences were necessary to protect the public from future crimes by Shirley or to punish him; (2) not disproportionate to the seriousness of Shirley's conduct and the danger he poses to the public; and (3) Shirley has a criminal history that demonstrates that consecutive sentences are necessary to protect the public from future crimes by him. (Tr. 244.) Accordingly, the trial court made the requisite findings for imposing consecutive sentences. Furthermore, the record supports the findings.

{¶ 40} The trial court's journal entry of sentencing, however, incorrectly states that in imposing consecutive sentences, the trial court found that (1) consecutive sentences are necessary to protect the public from future crime by Shirley or punish him; (2) not disproportionate to the seriousness of Shirley's conduct and the danger he poses to the public; and (3) *that at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses adequately reflects the seriousness of Shirley's conduct.* (Emphasis added.) The trial court did not make this third finding when imposing consecutive sentences; rather, it found that Shirley has a criminal history that demonstrates that consecutive sentences are necessary to protect the public from future crimes by Shirley. Accordingly, we remand for the trial court to enter a nunc pro tunc sentencing entry that correctly reflects the statutory findings made by the trial court when it imposed consecutive sentences. *State v. Holiday*, 8th Dist.

Cuyahoga No. 105070, 2017-Ohio-4306, ¶ 12 (sentencing entry should include statutory findings that were actually made at sentencing). The third assignment of error is sustained in part and overruled in part.

{¶ 41} Judgment affirmed and remanded.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for the issuance of a nunc pro tunc sentencing entry and execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

FRANK D. CELEBREZZE, JR., J., CONCURS;
SEAN C. GALLAGHER, P.J., CONCURS IN PART AND DISSENTS IN PART
WITH SEPARATE OPINION

SEAN C. GALLAGHER, P.J., CONCURRING IN PART AND DISSENTING IN PART:

{¶ 42} I concur with the majority's resolution of the consecutive sentencing issue, but disagree with the decision to affirm the tampering with evidence conviction. In this case, the state solely relied on Shirley's act of bending over in an

area where the firearm and Shirley's keys were later discovered in a bucket, covered by some leaves, for the predicate acts of the tampering with evidence charge. Under R.C. 2921.12(A)(1), no person who knows that an official proceeding or investigation is in progress, shall conceal any "thing" with the purpose of impairing its value or availability as evidence "in such proceeding or investigation." The majority concludes that a reasonable inference that Shirley tampered with evidence as statutorily defined is derived from his bending over near an area where the firearm was later recovered with Shirley's keys. In other words, according to the majority's resolution of the matter, Shirley was attempting to conceal the firearm for the purposes of R.C. 2921.12(A)(1) and such an inference arises from the single act of his placing the firearm in the bucket along with his house keys. If he intended to conceal his possession of the firearm from the police, one wonders why Shirley placed his keys in the same location. The keys irrefutably tied the firearm to Shirley.

{¶ 43} Nevertheless, the Ohio Supreme Court has acknowledged that there are three elements to the tampering with evidence offense under R.C. 2921.12(A)(1): "(1) the knowledge of an official proceeding or investigation in progress or likely to be instituted; (2) the alteration, destruction, concealment, or removal of the potential evidence; and (3) the purpose of impairing the potential evidence's availability or value in such proceeding or investigation." *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, 11 N.E.3d 1175, ¶ 11. A conviction for tampering with evidence requires "proof that the defendant intended to impair the value or availability of evidence that related to an existing or likely official investigation or

proceeding." *Id.* at ¶ 19. "Likelihood is measured at the time of the act of alleged tampering." *Id.*

{¶ 44} The term "knowingly" is defined under R.C. 2901.22(B) as follows:

A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶ 45} The Ohio Supreme Court has explained that the statute requires the accused to actually "be *aware* that conduct will probably cause a certain result or will probably be of a certain nature or that circumstances probably exist." *State v. Barry*, 145 Ohio St.3d 354, 2015-Ohio-5449, 49 N.E.3d 1248, ¶ 24. (Emphasis sic.) A person may be charged with knowledge of a particular fact "only if that person 'subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact." *Id.*, quoting R.C. 2901.22(B). The fact that the firearm was recovered separately from the offender after police respond to a report of criminal activity is not dispositive. "Ohio does not recognize the 'unmistakable crime' doctrine in connection with the offense of tampering with evidence" because according to the Ohio Supreme Court, to do so would erroneously impute constructive knowledge of a pending or likely investigation into the crime itself. *Id.* at syllabus.

{¶ 46} In *State v. Hallman*, 8th Dist. Cuyahoga No. 103675, 2016-Ohio-3465, ¶ 14, for example, the crime of tampering with evidence under R.C. 2921.12(A)(1) was demonstrated by the fact that after the offender discharged a weapon, he was told that police officers were summoned and their arrival imminent. *Id.* at ¶ 12. Upon hearing that statement, the offender frantically fled the area after taking the shell casings ejected from the discharged firearm from the scene of the crime to impede the officers' investigation.

{¶ 47} *State v. McGee*, 1st Dist. Hamilton No. C-150496, 2016-Ohio-7510, ¶ 29, is similar. In *McGee*, the act of hiding the firearm was not dispositive in and of itself. *Id.* The court in *McGee* relied on the fact that the defendant concealed the firearm and then consistently misled the police officers about the location of the firearm used in the crime after the investigation was commenced. *Id.* In other words, in finding sufficient evidence in support of the tampering charge, both courts concluded that the act of hiding the firearm, when coupled with other acts, constituted sufficient evidence.

{¶ 48} In this case, the fact that the firearm was discovered in the bucket along with Shirley's keys is not dispositive and does not give rise to an inference that Shirley knew an investigation or official proceeding was under way or was likely to ensue, and also that he knowingly concealed the evidence for the purpose of impairing the potential evidence's usefulness during that proceeding or investigation. The majority's reliance on *Hill*, *Dantzler,* and *Klein* highlights the growing trend toward criminalizing any act inconsistent with turning over all

evidence of wrongdoing to the police immediately after the commission of any crime at the risk of being charged with tampering with evidence. *See, e.g., State v. Martin*, 151 Ohio St.3d 470, 2017-Ohio-7556, 90 N.E.3d 857, ¶ 119 (burning clothes used during a murder constitutes a violation of R.C. 2921.12(A)(1) because the offender has constructive knowledge of an impending investigation because of the fact that murder is a crime that will certainly be investigated); *but see Barry*. It suffices that none of those cases present any analysis beyond the rote reference to an offender abandoning a criminal tool immediately after the commission of a crime.

{¶ 49} Under the majority's rationale, all criminal acts in which evidence is immediately abandoned will support a tampering-with-evidence charge regardless of the severity of the crime or the offender's knowledge of the investigation. This case represents the bridge too far. "[M]erely establishing that the crime committed is an unmistakable crime is insufficient to prove that the accused knew at the time the evidence was altered, destroyed, concealed, or removed that an official proceeding or investigation into that crime was ongoing or likely to be instituted." *Barry*, 145 Ohio St.3d 354, 2015-Ohio-5449, 49 N.E.3d 1248, at syllabus. The Ohio Supreme Court has provided an exception to *Barry* only with respect to murder. I would not expand *Martin* to include a crime such as having a weapon while under disability.

{¶ 50} In this case, the majority claims Shirley hid the firearm to conceal his commission of having a weapon while under disability. Nothing demonstrates Shirley's awareness of police investigating his having a weapon while under

disability.  It must be remembered that the state failed to prove that Shirley was involved in the shooting that triggered the police response in order to impute awareness of the investigation to Shirley.  *Id.*; *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, 11 N.E.3d 1175, ¶ 19.